# United States Court of Appeals
## For the First Circuit

No. 04-1403

MARTHA M. MARIE,

Plaintiff, Appellee,

v.

ALLIED HOME MORTGAGE CORP.,

Defendant, Appellant,

JOSEPH THOMPSON,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Diane M. Saunders, with whom Danielle Meagher, James M. Pender, and Morgan, Brown & Joy, LLP, were on brief, for appellant.
Robert M. Mendillo, with whom Mendillo & Ross, LLP, was on brief, for appellee.

March 16, 2005

**LYNCH**, **Circuit Judge**.  This case involving employment arbitration agreements deals with important issues both for Title VII law and for the division of labor between courts and arbitrators after the Supreme Court's decisions in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), and Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003).  The employee concedes that the Title VII claims involved in this case are arbitrable.  See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 10 (1st Cir. 1999).  The key issue is whether an employer waives its contractual right to compel arbitration of a Title VII claim by not filing for arbitration when the employee initiates an EEOC complaint, but instead waiting and only moving to compel arbitration after the employee later files a civil claim in federal court.  We hold here that although the issue of compliance with a contractual time limit should, in the first instance, be addressed by the arbitrator, the issue of waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court even after the Howsam and Green Tree holdings.

Moreover, on the merits, we hold that an employer does not waive its right to arbitration by failing to demand arbitration during the pendency of an EEOC investigation.  This confirms in the light of intervening Supreme Court cases a result this court had reached earlier on different reasoning.  See Brennan v. King, 139 F.3d 258, 263-64 (1st Cir. 1998).  Our reasoning rests in part on

-2-

EEOC v. Waffle House, Inc., 534 U.S. 279 (2002), which held that an employer cannot preclude the EEOC from bringing an enforcement action based on an employee's complaint by relying on an arbitration clause between the employer and employee. In light of Waffle House, a rule forcing the employer to file for arbitration during the pendency of an EEOC investigation would lead to wasteful, duplicative proceedings, and we reject such a result. We hold that the employer in this case has not waived its right to arbitrate the claims at issue. We reverse the decision of the district court refusing to stay judicial proceedings and compel arbitration, and remand.

## I.

Allied Home Mortgage Corporation is a Texas corporation in the business of mortgage banking; it has a branch office in Woburn, Massachusetts. Martha M. Marie began working for Allied's Woburn branch on November 1, 2000 as a mortgage loan processor. Joseph Thompson, a branch manager of Allied's Woburn branch, hired Marie and was her supervisor. He was Marie's boyfriend at the time of her hiring. She was to be compensated by receiving fifty percent of any loan origination fees on all loans she originated.

Marie alleges that Thompson used "undue influence, verbal abuse, and threats of physical abuse" to divert loan origination credit from Marie to Thompson, to force Marie to engage in an "autodialing" scheme in violation of The Telephone Consumer

Protection Act of 1991, 47 U.S.C. § 227, and to force Marie to pay for office supplies out of her own pocket. Marie alleges that Allied knew that some of her origination credit was being diverted from Marie to Thompson and did nothing.

Marie also alleges that Thompson threw her out of a stopped car in the winter of 2002 because he was angry with her work. Finally, she alleges that Thompson physically beat Marie in June 2002 both because he was angry with her work and because he thought she was having a sexual affair with another Allied employee. Marie alleges that Thompson wanted her to have sexual relations solely with him. Marie never returned to work after the beating in June -- the company listed her termination date as June 28, 2002. She claims that Allied falsely reported in its personnel records that she voluntarily quit her position. In July 2002, Marie sought and obtained an Abuse Prevention Order from a Massachusetts state court requiring Thompson to stay away from her.

When Marie was hired by Allied on November 1, 2000, she signed an employment contract that was also signed by Thompson as Allied's representative. This four-page standard-form agreement contained an arbitration clause in Article 5.1. The clause states:

> Employer and Employee agree to submit to final and binding arbitration any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement and Employee's employment by Employer and the termination of this Agreement and Employee's employment by Employer

> including the arbitrability of any such controversy or claim . . . . Arbitration under this section must be initiated within sixty days of the action, inaction, or occurrence about which the party initiating the arbitration is complaining.

The agreement also stated that any arbitration was to be conducted under the rules of the American Arbitration Association (AAA).

On April 23, 2003, Marie filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and with the Massachusetts Commission Against Discrimination (MCAD) against Allied and Thompson. The charge alleged sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 and applicable state law. The charge, in particular, alleged that during Marie's employment with Allied, Thompson "physically abused [her] and verbally abused [her] repeatedly because he thought [she] was having a sexual affair with another employee, and Thompson wanted [her] to have sexual relations only with him."

Allied filed a response to this charge on May 22, 2003. The EEOC issued a Dismissal and Notice of Rights on July 18, 2003, stating that it had concluded its investigation without finding that any violation of Title VII occurred. It stated that the evidence showed that Marie and Thompson lived together and represented themselves as domestic partners; there was no evidence that her "consensual relationship" with Thompson was "unwelcome" as required to be actionable under Title VII. Also, Thompson's actions were motivated by his personal relationship, not by Marie's

-5-

gender. Finally, the dismissal noted that Marie did not utilize Allied's existing sexual harassment policy. The dismissal stated that Marie now had a right to sue Thompson or Allied for sexual discrimination in federal or state court.

On October 14, 2003, Marie filed a civil complaint in Massachusetts Superior Court, naming Allied and Thompson as defendants; an amended complaint was filed on November 6, 2003. The amended complaint named both Allied and Thompson as defendants for assault and battery and sexual harassment under Title VII of the Civil Rights Act of 1964, and named Allied for negligent supervision of Thompson and for breach of contract and unjust enrichment. Marie asked for money damages and attorney's fees and costs under Title VII.

Thompson has never been served; Allied was served on November 20, 2003. Allied removed the action to federal district court in Massachusetts on December 9, 2003. On December 22, Allied filed a demand for arbitration with the AAA, within sixty days of being served. On December 23, 2003, Allied moved to compel arbitration and to stay the court proceedings; the motion was opposed by Marie. This motion was denied on January 8, 2004 (the order was docketed on January 12, 2004), by order stating: "It being undisputed that the initiation of arbitration proceedings occurred on December 22, 2003, more than sixty days after the conclusion of [the] charge proceedings before the [EEOC], the

-6-

demand for arbitration is untimely under Article V of plaintiff's employment agreement."

Allied did not appeal this order but instead, on January 26, 2004, moved to dismiss Marie's complaint as untimely, or, in the alternative, to reconsider the denial of the motion to compel arbitration and stay proceedings under Fed. R. Civ. P. 59(e). This motion was denied as to each alternative on February 18. The court considered the contract to be one of adhesion and relied upon the rule that an "ambiguous provision in an adhesion agreement will be strictly construed against the party that wrote it." The court also stated that Allied's argument was based on the premise that Marie was required to initiate arbitration within sixty days of the conclusion of the EEOC proceedings if she wanted to pursue her claims, while Allied had six years (the full limitation period for contract actions under Massachusetts law) to demand arbitration. This, the court stated, was inequitable and a "breathtaking" reading of the contract. The court, citing Martin v. Norwood, 478 N.E.2d 955, 957-58 (Mass. 1985), held that Allied, through its delay, had "waived" its right to arbitrate the claims and thus the lawsuit would proceed.

The district court's January 12 and February 18 holdings relied on two distinct theories for why arbitration should not be compelled and litigation stayed: (1) Allied's purported failure to comply with the precise 60-day time limit contained in the

-7-

arbitration provision, as interpreted by the court, and (2) Allied's waiver of its right to arbitrate due to unreasonable delay.

Allied filed a notice of appeal to this court on March 12, 2004. The notice appealed the district court's February 18, 2004 order, "insofar as such [o]rder denied Allied's motion for reconsideration of the denial of Allied's motion to compel arbitration."

## II.

We first examine the complex issue of our jurisdiction in this case; Marie argues there is none.

Ordinarily, appeals are only permitted from final judgments of the district court. There are a limited number of exceptions. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-43 (1993). A few of these exceptions occur in the arbitration context, as stated in the Federal Arbitration Act (FAA). See 9 U.S.C. § 16(a). Appeal may be taken from an interlocutory order of the district court "refusing a stay of any action" pending arbitration or "denying a petition . . . to order arbitration to proceed," although no appeal may be taken from a district court's granting such a stay or granting a motion to compel arbitration.[1] Id. § 16(a)(1), (b).

_____

[1]We note that we have no jurisdiction over the motion to dismiss filed with Allied's motion for reconsideration on January 26, 2004. Allied made no attempt to appeal this determination and,

-8-

In this case, Allied filed a motion with the district court to stay court proceedings and compel arbitration; both requests were denied and these denials were immediately appealable. But interlocutory appeals, like all other appeals, are governed by the time limitations identified in Fed. R. App. P. 4(a)(1)(A). This provision requires a party to file the notice of appeal within 30 days "after the judgment or order appealed from is entered." Id. This timeliness requirement is jurisdictional. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 61 (1982) ("It is well settled that the requirement of a timely notice of appeal is 'mandatory and jurisdictional.'" (quoting Browder v. Dir., Ill. Dep't of Corr., 434 U.S. 257, 264 (1978))); see also Davignon v. Clemmey, 322 F.3d 1, 10-11 (1st Cir. 2003) (timely notice of appeal requirement is jurisdictional although it is not an Article III requirement).

Rather than appealing immediately, Allied filed a motion for reconsideration. Allied argues that its filing a motion for reconsideration within ten days of the initial order tolled the time for appeal until after the court's ruling on the motion for

_____

more importantly, a denial of a 12(b)(6) motion to dismiss is not an appealable interlocutory order. Marie argues that Allied has waived review of the denial of the motion to compel arbitration and stay proceedings because its initial brief to this court only discussed the motion to dismiss and not the latter motion. This is untrue: while Allied's initial brief did erroneously discuss the order denying the motion to dismiss, it also discussed the denial of the motion to compel arbitration and stay proceedings.

-9-

reconsideration. Since an appeal was filed within thirty days of the ruling on the motion for reconsideration, Allied argues that the appeal is timely.

Allied's position is correct. Allied's motion for reconsideration stated that its basis was as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e); at any rate, we have held that a motion for reconsideration should be construed as a motion to alter or amend a judgment under Rule 59(e) where this is relevant for jurisdictional purposes. See, e.g., United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004); Young v. Gordon, 330 F.3d 76, 80 (1st Cir. 2003); In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987) ("Notwithstanding that [appellant] did not denominate any particular rule as the springboard for its reconsideration motion, it is settled in this circuit that a motion which asked the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)."). The motion for reconsideration filed here must be so construed.[2]

---

[2]We note that it is very difficult to prevail on a Rule 59(e) motion. The general rule in this circuit is that the moving party must "either clearly establish a manifest error of law or must present newly discovered evidence." Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004) (quoting FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)); see also 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995) (noting four grounds for granting such a motion: manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law). As well, grants and denials of Rule 59(e) motions are reviewed only

The "judgment" that Allied asked the court to "alter or amend" was the court's January 8, 2004 order denying Allied's motion to stay proceedings and compel arbitration. Fed. R. Civ. P. 59(e). For purposes of the Federal Rules of Civil Procedure, this order was a judgment because it was an "order from which an appeal lies." Fed. R. Civ. P. 54(a); see Abdulwali v. Wash. Metro. Area Transit Auth., 315 F.3d 302, 303-04 (D.C. Cir. 2003) (order denying summary judgment based on sovereign immunity was "judgment" for purposes of Federal Rules of Civil Procedure); Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 400-01 (2d Cir. 2000) (same with respect to order granting a preliminary injunction); Roque-Rodriquez v. Lema Moya, 926 F.2d 103, 106 (1st Cir. 1991) (same with respect to order denying summary judgment based on qualified immunity).

The motion requesting that the January 8 order be altered or amended was timely filed within ten days of that order.[3] Fed.

_____

for abuse of discretion. See Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004). Allied claimed to have brought its motion because of a manifest error of law made by the district court. Even though Allied may have had little chance of prevailing on its Rule 59(e) motion, the motion still acted to toll the 30-day appeal period.

[3]There was some question about this at oral argument; in response, Allied submitted a Rule 28(j) letter. The order was dated January 8, 2004, but it was not entered on the docket until January 12, 2004. The docketed date is the one used for purposes of computing filing deadlines. See Roque-Rodriquez, 926 F.2d at 106. The ten day limit is unquestionably met from this latter date, given that the day the order is handed down, as well as intermediate weekends and holidays, are not included in the

-11-

R. Civ. P. 59(e). Under Fed. R. App. P. 4(a)(4)(A), certain motions, if timely filed, can toll the thirty-day appeal period. A motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment appears on this list. Fed. R. App. P. 4(a)(4)(A)(iv). A timely motion to alter or amend a "judgment" that is an appealable interlocutory order tolls the time for filing a notice of appeal. See Lichtenberg, 204 F.3d at 400-01; Roque-Rodriguez, 926 F.2d at 106-07; Denley v. Shearson/Am. Express, Inc., 733 F.2d 39, 41 (6th Cir. 1984). The thirty-day clock restarts after the order denying the motion to alter or amend the judgment. Fed. R. App. P. 4(a)(4)(A). This order was handed down on February 18, 2004; Allied filed its notice of appeal on March 12, 2004. The notice of appeal was thus timely as to the underlying motion to stay proceedings or compel arbitration.[4]

_____

calculation. See id. at 106 n.5, 107.

[4]Any motion for reconsideration filed after the ten day period does not toll the time period for appealing the underlying order that the party is asking to be reconsidered. See, e.g., Lichtenberg, 204 F.3d at 401.

As well, at least absent some newly available evidence, law, or a new stage of the proceedings, orders denying such motions for reconsideration of an appealable interlocutory order are generally not themselves appealable. See, e.g., Fisichelli v. Town of Methuen, 884 F.2d 17, 19 (1st Cir. 1989) (no appellate jurisdiction over motion to reconsider, raising no newly available facts or arguments, filed one and a half years after denial of original motion for qualified immunity); Cozza v. Network Assocs., Inc., 362 F.3d 12, 15 (1st Cir. 2004) (leaving open question of whether appeals court would have jurisdiction over motion for reconsideration of order denying stay of proceedings and compelling arbitration based on newly available evidence); see also Behrens v. Pelletier, 516 U.S. 299, 306-07 (1996) (allowing appeals of orders

-12-

Marie argues that, even granting all of this, Allied did not attempt to appeal the underlying motion to stay proceedings or compel arbitration, but only the order denying reconsideration, because its notice of appeal named only the latter order.  It is true that the notice of appeal named only the order denying Allied's motion for reconsideration as being appealed, and Fed. R. App. P. 3(c)(1)(B) states that a party should "designate the judgment, order, or part thereof being appealed."  As well, a Rule 59(e) motion is separate from the underlying judgment for purposes of appeal.  Correa v. Cruisers, 298 F.3d 13, 21 n.3 (1st Cir. 2002).

However, when determining what is actually being appealed, we have been liberal.  See Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3-4 (1st Cir. 2002).  We look to the appellant's intent on the record as a whole and at whether the appellee has been misled by the appellant's unclear notice.  See Foman v. Davis,

denying qualified immunity both at motion to dismiss stage and at summary judgment stage); Oblix, Inc. v. Winiecki, 374 F.3d 488, 490 (7th Cir. 2004) (allowing jurisdiction over motion to reconsider filed more than ten days after order denying motion to compel arbitration, where judge invited reconsideration in order to consider new case law).  Such a denial of a motion for reconsideration is not another denial on the merits of the immediately appealable underlying motion.  The Fisichelli court stressed that this rule was "virtually essential to orderly judicial management," since interlocutory motions to reconsider are not in the Federal Rules and therefore can be brought at any point in a proceeding, and as many times as a movant wishes.  Fisichelli, 884 F.2d at 19.  "[A] dilatory defendant would receive not only his allotted bite at the apple, but an invitation to gnaw at will." Id.

371 U.S. 178, 181-82 (1962) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities."); Young v. Gordon, 330 F.3d 76, 80-81 (1st Cir. 2003); Zukowski v. St. Lukes Home Care Program, 326 F.3d 278, 283 n.4 (1st Cir. 2003) (notice of appeal may be read to include denial of underlying motion, and not simply denial of motion for reconsideration, when it "can be fairly inferred from the notice" that appellant intended to appeal the underlying motion (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 15 n.5 (1st Cir. 1997))); Correa, 298 F.3d at 21 n.3 (briefs as well as notice of appeal can be consulted during this process); Chamorro, 304 F.3d at 3-4.  Here, based on our review of the notice of appeal as well as the briefs, Allied manifested an intent, however awkwardly phrased, to appeal the underlying order denying the motion to stay proceedings and compel arbitration as well as the later denial of the Rule 59(e) motion.[5]

We will exercise jurisdiction to review the district court's initial order denying Allied's motion to stay proceedings and compel arbitration.  We turn now to the merits.

---

[5]Marie should not have been misled by Allied's notice of appeal, but it is true that her initial brief focused on the jurisdictional issue and touched on the merits only in a single footnote.  Any possible prejudice was vitiated by this court's order of January 18, 2005, which granted Marie fourteen days to file an additional brief on the merits; such a brief was filed by Marie on February 1, 2005.  Another order of this court on February 9 granted Allied seven days to file a brief responding to Marie's new brief; such a brief was filed by Allied on February 16.

Given the nature of the issues in this case, the primary of which is waiver, our review of the district court's denial of a motion to compel arbitration and stay judicial proceedings is de novo. In re Citigroup, Inc., 376 F.3d 23, 25-26 (1st Cir. 2004) (review of waiver issue, fact finding aside, is de novo); InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003); KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 48 (1st Cir. 1999).

A. Who decides each issue: court or arbitrator?

The initial question is whether the court or the arbitrator is empowered to decide the issues of (1) waiver of Allied's right to arbitrate, and (2) compliance with the 60-day contractual provision.[6] We begin by considering relevant precedent in this area.

It does not resolve these division of labor issues merely to note that they are usually, ultimately, matters of contract interpretation. See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451-52 (2003) (plurality opinion); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Certain presumptions have

---

[6]Of course, it was not until plaintiff filed her amended complaint and served Allied on November 20, 2003 that Allied was on notice of Marie's non-Title VII claims: assault and battery, negligent supervision, breach of contract, and unjust enrichment. There is no question that Allied made its demand for arbitration as to those claims within 60 days of its first notice of the claims.

-15-

been constructed to aid in the resolution of these issues of division of responsibility; these presumptions generally hold "in the absence of clear and unmistakable evidence to the contrary." See Green Tree, 539 U.S. at 452 (alterations, internal quotation marks, and citation omitted). These presumptions operate within the underlying framework that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," given the pro-arbitration policy of the Federal Arbitration Act. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The Supreme Court has most recently treated the issue of how these presumptions operate in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), and Green Tree, 539 U.S. at 444, where much of the Court's precedent in this area was consolidated and simplified. In Howsam, the Court held that the issue of whether an arbitration claim was barred by a six-year limitations period embedded in the arbitration rules under which the parties had agreed to arbitrate was an issue for the arbitrator, and not for the court. Howsam, 537 U.S. at 85-86. The Court noted that at least two sorts of questions were presumptively for the court to decide: (1) "whether the parties are bound by a given arbitration clause," and (2) "whether a concededly binding arbitration clause applied to a particular type of controversy." Id. at 84. Many other types of claims, including even some "gateway questions" that

might dispose of the entire claim, are presumptively left to the arbitrator. See id. at 84-85. This category includes "procedural questions which grow out of the dispute and bear on its final disposition." Id. at 84 (internal quotation marks omitted). This distinction has employed the rough rubric that procedural issues, even if potentially dispositive, are left to the arbitrator; substantive questions about the kind of disputes intended for arbitration are reserved for the court, absent clear and unmistakable evidence to the contrary.[7]

In Green Tree, the Court held that whether an arbitration agreement allowed for class arbitration was likewise an issue of contract interpretation for the arbitrator rather than the judge. Green Tree, 539 U.S. at 452-53. The Court reaffirmed the basic framework of presumptions described in Howsam and held that the issue here, which went to "what kind of arbitration proceeding the parties agreed to" rather than "whether they agreed to arbitrate a matter," was presumptively for the arbitrator. Id. at 452.

_____

[7]The general rule, which the Supreme Court culled from the Revised Uniform Arbitration Act ("RUAA") (which in turn was based on trends and reasoning embodied in judicial precedent), was that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled"; "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." Id. at 85 (quoting RUAA § 6(c) & cmt. 2, 7 U.L.A. 12-13 (Supp. 2002) (internal quotation marks omitted) (emphasis in Howsam)).

-17-

The Court in both Howsam and Green Tree also stressed issues of comparative expertise. In the face of contractual silence, courts should presume that parties intend to give their disputes to the most able decisionmaker on a given issue, both for contractual and public policy reasons. Howsam, 537 U.S. at 85. The Howsam Court stated that the arbitrators were presumptively more expert in interpreting their own limitations rule, id., while the Green Tree Court noted that the class arbitration issue raised questions of "contract interpretation and arbitration procedures," both of which an arbitrator was "well suited to answer," Green Tree, 539 U.S. at 453.

This circuit has had only two opportunities to consider the impact of Howsam and Green Tree on the division of issues between the court and the arbitrator. In Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, 321 F.3d 251 (1st Cir. 2003), we held that the question of whether three grievances being arbitrated separately should be consolidated into a single arbitration was a "procedural matter" that was presumptively for the arbitrator. Id. at 254. In Richard C. Young & Co. v. Leventhal, 389 F.3d 1 (1st Cir. 2004), we held that a forum-selection clause in an arbitration agreement was likewise for the arbitrator, as a "procedural question." Id. at 4-5.

The district court's holding in its two orders necessarily relied on two distinct points: (1) that Allied's demand

-18-

for arbitration was untimely because it failed to abide by the sixty-day limitations period specified in the contract itself, and (2) that Allied waived its right to arbitration by not filing for arbitration during and after the EEOC proceeding. We address these two points in turn, finding that the contractual timeliness issue is for the arbitrator but that the issue of waiver by conduct is for the court.

Contractual Time Limitation

The arbitration clause in the contract at issue states: "Arbitration under this section must be initiated within sixty days of the action, inaction, or occurrence about which the party initiating the arbitration is complaining." The district court's conclusion that Allied's motion to stay proceedings was untimely rested, in part, on interpretation of this language. The court held that Allied had only sixty days from the conclusion of the EEOC proceedings in which to demand arbitration. We hold that the court erred in itself interpreting the contractual time limit clause and applying it to Allied.

Under Howsam, which itself dealt with a time limit provision, this is the sort of procedural prerequisite that is presumed to be for the arbitrator. See Howsam, 537 U.S. at 84-85; see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556-59 (1964) (issue of whether party failed to abide by procedural prerequisites to arbitration, including requirement that notice of

any grievance be given within four weeks, was for arbitrator and not court). While the time limit in Howsam was in the arbitrator's own rules rather than in the contract itself, this makes no difference.[8] The arbitrator might be expected to have comparative expertise in determining the meaning of these sorts of contractual limitations provisions in light of the background norms in this employment area. And as in Wiley, consideration of this kind of procedural provision may entangle the court in issues that go properly to the merits of the dispute, which are for the arbitrator. See Wiley, 376 U.S. at 557. The presumption that the time limitation clause is for the arbitrator is not overcome by any of the language in the contract.

Judicially Found Waiver

The court's holding also rested implicitly on broader notions of judicially implied waiver. The argument for waiver in this case is essentially that Allied's participation in the EEOC proceedings initiated by Marie without Allied having demanded arbitration during or after those proceedings constituted conduct

---

[8]Indeed, the rule that contractual limitations were presumptively for the arbitrator was the clear majority rule even before Howsam and Green Tree. See, e.g., Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir. 1991) ("[W]e stated emphatically that any limitations defense--whether stemming from the arbitration agreement, arbitration association rule, or state statute--is an issue to be addressed by the arbitrators."); 2 I. R. Macneil et al., Federal Arbitration Law §§ 21.2.1.2, 21.2.2 (1994) ("[G]enerally the effect of an express time limit for arbitration will be decided by the arbitrators.").

inconsistent with the future desire to arbitrate its claims. See, e.g., Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 220-21 (1st Cir. 1995); 2 I. R. Macneil et al., Federal Arbitration Law § 21.3.1 (1994). This court has a long history of deciding such waiver claims itself; invariably, these cases involve the inquiry into whether, by choosing or allowing the litigation of its claims before a court rather than an arbitrator, a party has waived its right to arbitrate. See, e.g., Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32-34 (1st Cir. 2001); Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 316 (1st Cir. 1997); Menorah, 72 F.3d at 221-22; Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 19 (1st Cir. 1986); Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of N.H., 671 F.2d 38, 42-44 (1st Cir. 1982). Further, in Menorah and Jones Motor Co., we held explicitly that the issue of waiver, at least where the alleged waiver was due to litigation-related activity, was presumptively for the judge and not the arbitrator. See Menorah, 72 F.3d at 222; Jones Motor Co., 671 F.2d at 43. This was in accord with the overwhelming weight of pre-Howsam authority, which held that waiver due to litigation conduct was generally for the court and not for the arbitrator. See generally 2 I. R. Macneil et al., Federal Arbitration Law § 21.3 (1994).

Few courts have had occasion to consider the impact of Howsam and Green Tree on the doctrine of waiver of arbitration by conduct, and they have disagreed. The Eight Circuit has held, with little discussion, that Howsam and Green Tree indicate that waiver is now presumptively an issue for the arbitrator, and not for the courts, at least where the conduct allegedly constituting waiver is due to litigation in some other court. See Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003); see also Bellevue Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 324 (E.D. Pa. 2004) (relying on Howsam for the proposition that "it appears that . . . the issue of whether the defendant, by litigating in this Court the present case, has waived the right to demand arbitration should properly be presented in the first instance to the arbitrator"). The Transamerica court cited to language in Howsam stating that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Howsam, 537 U.S. at 84 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (alteration in Howsam)).

By contrast, a panel of the Fifth Circuit has held that the issue of waiver by conduct is for the court, and not for the arbitrator, in situations where the alleged waiver occurred due to conduct before the district court. See Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed. Appx. 462, 464 (5th Cir.

-22-

2004); see also Carbajal v. Household Bank, FSB, No. 00-C-0626, 2003 WL 22159473, at *9 (N.D. Ill. Sept. 18, 2003).  This was particularly so given the court's comparative expertise.  See Tristar, 97 Fed. Appx. at 464.

In a stream of recent cases, the First Circuit has continued to decide waiver questions due to litigation-related activities without discussing the impact of Howsam, most likely because no party raised the issue.  See In re Citigroup, Inc., 376 F.3d 23, 26-29 (1st Cir. 2004); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12-14 (1st Cir. 2003); Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 60-62 (1st Cir. 2003).  It has been raised here.

We start our analysis of whether waiver by conduct in this context is a decision for the court or for the arbitrator by noting that textually under the FAA, a court is only permitted to stay a court action pending arbitration if "the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3 (emphasis added).  A "default" has generally been viewed by courts as including a "waiver."  See, e.g., Patten Grading & Paving, Inc. v. Skanska USA Building, Inc., 380 F.3d 200, 204-05 (4th Cir. 2004); Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 n.17 (11th Cir. 2002); MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001); County of Middlesex v. Gevyn Constr. Corp., 450 F.2d 53, 56 n.2 (1st Cir. 1971) (only waiver due

-23-

to the pursuit of legal remedy inconsistent with arbitration is a "default" under 9 U.S.C. § 3). This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves. It is true that the same language does not appear in section 4, the section dealing with attempts to compel arbitration, 9 U.S.C. § 4, but the Supreme Court has cautioned us to interpret sections 3 and 4 of the FAA together. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); see also Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 456-57 (2d Cir. 1995). At any rate, Allied is moving for a stay of Marie's lawsuit against it under section 3.

Howsam also relies heavily on the Revised Uniform Arbitration Act of 2000 ("RUAA"). The RUAA, in turn, as quoted by the Howsam Court, establishes that procedural issues are generally for the arbitrator and substantive issues generally for the court. See RUAA § 6, cmt. 2, 7 U.L.A. 14-15 (Supp. 2004). Another comment in the same section of the RUAA treats waiver as an issue for the court: "Waiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause." RUAA § 6, cmt. 5, 7 U.L.A. 16 (Supp. 2004).

As expressed in the commentary to the RUAA and elsewhere, there are important policy reasons why a court and not an arbitrator should decide waiver issues, at least where the waiver -- as has generally been true in our cases -- is due to litigation-

-24-

related activity. Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings. See Jones Motor Co., 671 F.2d at 43; Doctor's Assocs., 66 F.3d at 456 & n.12.

Also, the comparative expertise considerations stressed in Howsam and Green Tree argue for judges to decide this issue. See Howsam, 537 U.S. at 85; Green Tree, 539 U.S. at 452-53. Judges are well-trained to recognize abusive forum shopping. See Tristar, 97 Fed. Appx. at 464; Bell v. Cendant Corp., 293 F.3d 563, 569 (2d. Cir. 2002); Jones Motor Co., 671 F.2d at 43. As well, the inquiry heavily implicates "judicial procedures," which Green Tree suggests should be an important factor in presuming that an issue is for the court. See Green Tree, 539 U.S. at 452-53 (emphasis added). Further, the procedural waiver issue is not likely to be intertwined with the merits of the dispute. See RUAA § 6 cmt. 5, 7 U.L.A. 16 (Supp. 2004); see also Wiley, 376 U.S. at 557-58; Prima Paint Corp., 388 U.S. at 403-04.

Finally, sending waiver claims to the arbitrator would be exceptionally inefficient. A waiver defense is raised by one party to a lawsuit in response to another party's motion to compel arbitration or stay judicial proceedings on the basis of an arbitration agreement signed by the parties. If the arbitrator

-25-

were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The case would have bounced back and forth between tribunals without making any progress. See 2 I. R. Macneil et al., Federal Arbitration Law § 21.3 (1994); RUAA § 6 cmt. 5, 7 U.L.A. 16 (Supp. 2004).

This is different in kind from the arbitrator's normal resolution of a gateway issue: normally, the resolution of such an issue would bar not only arbitration but any sort of litigation on the issues by either side. Thus, allowing courts to decide waiver issues -- at least when due to litigation-related activity -- furthers a key purpose of the FAA: to permit speedy resolution of disputes. See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-20 (1985); Moses H. Cone Mem'l Hosp., 460 U.S. at 22-23; see also Menorah Ins. Co., 72 F.3d at 222 (observing in context of international, non-FAA arbitration case that "[a]rbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process"). Moreover, the Howsam and Green Tree rules exist partly "to avoid . . . delay." Shaw's Supermarkets, Inc., 321 F.3d at 255. We hold that the Supreme Court in Howsam and Green Tree did not intend to disturb the traditional rule that waiver by conduct, at least where due to

litigation-related activity, is presumptively an issue for the court.[9]

The waiver here is somewhat unusual in that the claim is of litigation activity before the EEOC that is inconsistent with a right to arbitrate, as opposed to activity before a court. But this makes no difference. Courts are still well suited to determine the sort of forum-shopping and procedural issues that are likely to arise in litigation before the EEOC, and sending the waiver issue to the arbitrator would still be inefficient. The proper presumption in this case is that the waiver issue is for the court and not the arbitrator.

Allied, seeking reversal on any available ground, argues that this presumption is overcome because of specific language in the arbitration agreement. There is no merit to Allied's contention.[10] A shifting of the issue to the arbitrator will only be found where there is "clear and unmistakable evidence" of such an intent in the arbitration agreement. No such evidence exists

---

[9]The conduct allegedly constituting waiver in a given case could conceivably be non-litigation-related, although in practice virtually all cases have involved litigation-related waiver. We do not here discuss the proper presumptive division of labor as between courts and arbitrators for non-litigation-related waiver claims or for other doctrines that are sometimes (erroneously) referred to as waiver, such as laches.

[10]We are not sure that waiver can, in all cases, be contracted away from the court's competence at all. The "default" language in Section 3 of the FAA, which as we noted includes waiver, perhaps gives courts a duty, which cannot be shifted by contract between the parties, to determine whether waiver has occurred.

here.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (quoting AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) (alterations omitted)).  The standard in First Options is meant to be a high one, and the normal presumptions in favor of arbitration do not apply.  See, e.g., Coady v Ashcraft & Gerel, 223 F.3d 1, 9-10 (1st Cir. 2000).

Allied focuses on the following language in the agreement: "Employer and employee agree to submit to final and binding arbitration any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement . . . including the arbitrability of any such controversy or claim . . . . " (emphasis added).  Specifically, Allied focuses on the clause stating that questions of "arbitrability" are for the arbitrator. "Arbitrability" itself encompasses a variety of possible meanings, but the most obvious meaning focuses on certain substantive issues, and particularly the question of whether a particular kind of dispute at issue falls within the scope of the arbitration clause. Most cases that discuss arbitrability focus on these substantive issues.  See, e.g., First Options, 514 U.S. at 942; AT&T, 475 U.S. at 645; Coady, 223 F.3d at 9; see also Johnson v. Polaris Sales, Inc., 257 F. Supp. 2d 300, 308-09 (D. Me. 2003) (interpreting "arbitrability" language in arbitration agreement to throw issues of substantive scope to the arbitrator); 1 Domke on Commercial

Arbitration § 15 (3d ed. 2003) (discussing arbitrability question as an issue of the scope of the arbitration agreement). The context of the agreement suggests that this sort of substantive meaning is intended for the term "arbitrability" here; the reference to "arbitrability" is surrounded by references to which types of claims should be arbitrated and which should not be. We cannot say that the use of the term here evinces a clear and unmistakable intent to have waiver issues decided by the arbitrator. There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so. The issue of who would decide such a question is an "arcane" one that employees are unlikely to have considered unless clearly spelled out by the employer. See First Options, 514 U.S. at 945.

We hold that the question of waiver of Allied's right to arbitrate due to its participation in EEOC proceedings is properly for the judge, and we turn now to the merits of that question.

B. Waiver due to EEOC proceedings

Marie urges us to find waiver both from the fact that Allied failed to file for arbitration during the pendency of the EEOC investigation and from the fact that it failed to file for arbitration after the EEOC proceeding had concluded with the EEOC's finding of no violation but before Marie had brought her private

civil suit in federal district court. At least two elements of waiver by conduct that this circuit has identified are (1) undue delay in bringing arbitration that is inconsistent with the desire to arbitrate and (2) prejudice to the other party from that delay. See Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003); Menorah, 72 F.3d at 221-22. Since, in this case, there was no undue delay, we need not reach the prejudice issue.

The argument that waiver occurred during the pendency of the EEOC proceedings runs contrary to circuit precedent. Brennan v. King, 139 F.3d 258, 263-64 (1st Cir. 1998), found no waiver where an employer failed to raise its right to arbitrate with the EEOC during the pendency of EEOC proceedings. As well, since Brennan, the Supreme Court has held that an employer cannot stop the EEOC, a third party, from bringing a public enforcement action against an employer by invoking an arbitration agreement between the employer and the relevant employee. See EEOC v. Waffle House, Inc., 534 U.S. 279, 297-98 (2002). The EEOC is a nonparty to the arbitration agreement and therefore cannot be bound by it. See id. at 294. The same logic applies to a preliminary EEOC investigation, which also cannot be halted by an arbitration agreement between the complaining employee and her employer.

If the EEOC's investigation of an employer cannot be stopped by invoking an arbitration agreement, then forcing the employee and employer to begin an arbitration proceeding during the

-30-

pendency of that investigation will automatically result in two adjudications involving the same issue at the same time: (1) the EEOC investigation of the employer at the employee's urging and (2) the arbitration between the employer and the employee that the employer initiated. This is quite inefficient.[11] Further, the EEOC investigation might definitively resolve the claim: the employee might receive a notice that the EEOC did not wish to start an enforcement action, along with a rationale for this decision and a right to sue letter, and determine that she did not want to sue after all. That was not Marie's reaction to her letter, but it may well be the reaction of many employees. And if this were the reaction, then there would be no need for employer-employee arbitration at all.

Thus, forcing employers to bring arbitration during the pendency of EEOC investigations is a waste of resources and is contrary to the general purposes of the FAA.[12] See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-20 (1985); Sink v.

_____

[11]This is true even if one party sought to stay the arbitration pending EEOC proceedings, forcing the expenditure of resources to obtain a stay and running a risk that the other party will oppose or that the arbitrator will decline the stay.

[12]We note as well that there is little risk of abusive forum shopping by the employer in this kind of situation. Since, under Waffle House, the EEOC cannot be stopped from investigating and litigating against the employer by virtue of an arbitration clause, even if the employer initiates arbitration only when things turn badly for it before the EEOC, the EEOC will not be hindered in its pursuit of the employer.

Aden Enters., 352 F.3d 1197, 1201 (9th Cir. 2003).  It is also contrary to the scheme established in the federal employment discrimination statutes, which generally is designed to avoid inefficient, duplicative proceedings.  See 42 U.S.C. § 2000e-5(f)(1) (employee's private civil lawsuit against employer may only be filed after EEOC has investigated and issued a right to sue letter; no private civil lawsuit may be initiated during the 180-day period allotted for EEOC investigations or after the EEOC has decided to bring a public enforcement action); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27 (1991) (explaining similar scheme under 29 U.S.C. § 626, the Age Discrimination in Employment Act).[13]

We reaffirm that an employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings.  The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate.  Our holding here is in accord with the few cases elsewhere to discuss this issue.  See, e.g., Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222-23 (11th Cir. 2000);

---

[13]We say nothing here about whether or when an employer has a right to initiate an arbitration during the course of an EEOC investigation.  We hold only that an employer should not be forced to file for arbitration during an EEOC investigation by finding a waiver of its right to arbitrate if it does not make such a filing.

<u>Gonzalez</u> v. <u>GE Group Adm'rs, Inc.</u>, 321 F. Supp. 2d 165, 171-72 (D. Mass. 2004).

The same considerations apply after an EEOC investigation has concluded with a finding of no violation. We will not force the employer to make a wasteful, preemptive decision to arbitrate when it has no idea whether a dispute will still exist. As the <u>Brown</u> court stated, in general there is no need for the non-complaining party, the employer, to make a "pre-suit demand for arbitration." <u>Brown</u>, 211 F.3d at 1223.

Marie has rightly made no claim here that Allied's actions after Marie's lawsuit was filed constitute waiver of Allied's right to arbitrate. The motion to compel arbitration and stay proceedings was made in a reasonably prompt fashion after the lawsuit began.

## IV.

The decision of the district court is **reversed**, and the case is remanded for proceedings consistent with this opinion. Since Allied has not waived its right to arbitrate, the issue of timeliness under the sixty-day contractual provision is for the arbitrator, and Marie has raised no other issues on appeal,[14] an

---

[14]Marie has made no argument, for example, that the substantive scope of the arbitration provision between her and Allied does not include all of the claims that she has raised. In fact, in her appellate brief on the merits, Marie concedes that all claims that she has raised to the district court are within the substantive scope of the arbitration clause.

order should enter compelling arbitration of all claims that Marie has raised and either staying or dismissing Marie's judicial proceedings in conformance with the FAA. <u>See</u> <u>Bercovitch</u> v. <u>Baldwin Sch., Inc.</u>, 133 F.3d 141, 156 & n.21 (1st Cir. 1998) ("[A] court may dismiss, rather than stay, a case [under 9 U.S.C. § 3] when all of the issues before the court are arbitrable.").