[991 NYS2d 400]

Rita Cusimano, Individually and Derivatively as Shareholder, Officer, Partner and Member of Berita Realty Corp. and Others, et al., Appellants, v Andrew V. Schnurr, CPA, et al., Respondents, and Bernard V. Strianese et al., Third-Party Intervenors-Respondents.

First Department, August 7, 2014

APPEARANCES OF COUNSEL

*Dewey Pegno & Kramarsky LLP*, New York City (*David S. Pegno, Tamara L. Bock* and *David C. Gartenberg* of counsel), for appellants.

*Garvey Schubert Barer*, New York City (*Alan A. Heller* and *Ella Aiken* of counsel), for Andrew V. Schnurr and others, respondents.

*Joseph & Terracciano, LLP*, Syosset (*Peter J. Terracciano* and *Janine T. Lynam*, of counsel), for Bernadette Strianese, respondent.

## OPINION OF THE COURT

RICHTER, J.

In this appeal, we must determine, first, whether the Federal Arbitration Act (FAA) (9 USC § 1 *et seq.*) applies to the underlying agreements and, second, whether plaintiffs waived their right to arbitrate a statute of limitations issue by having pursued their claims through litigation. We conclude that the FAA does apply and, therefore, the question of whether plaintiffs' claims are time-barred should be determined by the arbitrator. We also find that plaintiffs did not waive their right to have the statute of limitations issue decided by the arbitrator.

Plaintiffs Rita Cusimano and Dominic J. Cusimano are husband and wife, and intervenors Bernard V. Strianese and Bernadette Strianese are Rita's father and sister respectively. Rita and the Strianeses own or formerly owned, in various degrees, certain entities that invest in commercial real estate. Defendants Andrew V. Schnurr, CPA and Michael Gerard Norman, CPA are certified public accountants who, along with Michael Gerard Norman, CPA, P.C., Norman's accounting firm (collectively the accountants), are alleged to have provided accounting and tax services to the Cusimanos and the various entities. The first of these entities is the Strianese Family Limited Partnership (FLIP), which initially owned commercial property in Deer Park, New York, and now owns a commercial property in Florida, which is currently leased to a CVS Drug Store. The second entity is Berita Realty, LLC (Berita), which currently owns a minority interest in an entity that owns a Marriott Hotel in New York State. The third enterprise consists of two entities known collectively as the Seaview Corporations (Seaview), which own two commercial buildings in New York State.

In September 2011, the Cusimanos commenced this action against the accountants alleging that they acted in concert with the Strianeses to misappropriate distributions and assets from Berita, commit tax fraud in relation to FLIP, and fraudulently induce Rita to sell her interest in Seaview to Bernard.[1] The complaint asserts causes of action for aiding and abetting fraud, accounting malpractice and breach of fiduciary duty, and seeks both monetary and injunctive relief.[2]

In February 2012, the accountants moved to dismiss the complaint, asserting that the Cusimanos' claims are barred by the statute of limitations. They also sought dismissal on several other grounds, including failure to allege the fraud claim with particularity and failure to state a cause of action.[3] In an oral decision rendered July 17, 2012, the motion court dismissed the malpractice claims against Schnurr as time-barred based on its conclusion that he ceased to render any accounting services in

---

**1.** Rita asserts claims both individually and derivatively on behalf of FLIP and Berita.

**2.** Following the filing of the complaint, the Cusimanos moved to disqualify the accountants' counsel. The court denied that motion and that issue is not before us on this appeal.

**3.** While the accountants' motion was pending, the Cusimanos served several nonparty subpoenas. It appears that no discovery was exchanged in response to these subpoenas.

or about 2002. The motion court also concluded that the malpractice claims against Norman and his firm were barred by the statute of limitations to the extent they involved acts or omissions preceding 2008. In addition, the motion court found that the fraud and breach of fiduciary duty claims were not pleaded with the specificity required by CPLR 3016 (b), but gave plaintiffs leave to replead. In light of the motion court's decision on repleading, it stayed discovery.

In September 2012, instead of filing an amended complaint, the Cusimanos filed a demand for arbitration and statement of claim with the American Arbitration Association (AAA). In the arbitration, which was brought against both the accountants and the Strianeses, the Cusimanos asserted claims similar to those raised in the complaint in the court action. Plaintiffs then moved pursuant to CPLR 7503 (a) to stay the action pending the arbitration. The accountants cross-moved pursuant to CPLR 7503 (b) to permanently stay the arbitration on the grounds that the arbitration claims are time-barred. By separate motions, the Strianeses each moved to intervene in the court action and to permanently stay the arbitration based on the statute of limitations. The Cusimanos opposed a stay of arbitration and argued that, because the agreements were subject to the FAA, the issue of the statute of limitations was for the arbitrator, not the court, to decide.

In a decision and order entered July 16, 2013, the motion court found that the FAA does not apply to the agreements at issue because they do not involve interstate commerce (40 Misc 3d 1208[A], 2013 NY Slip Op 51077[U] [2013]). Thus, the motion court concluded that the question of whether the claims are barred by the statute of limitations was for it to decide. The motion court then found that many of the Cusimanos' claims were barred by the statute of limitations, and granted the accountants' and the Strianeses' motions to the extent of permanently staying arbitration of the time-barred claims.[4] The motion court also concluded that any right Rita may have had to arbitrate was waived by her resort to, and participation in, the litigation of this action. Finally, the court granted plaintiffs' motion to the extent of directing the parties to proceed to arbitration on the non-time-barred claims. A judgment was

---

4.  The motion court also granted the Strianeses' motions to intervene.

entered on September 11, 2013, and plaintiffs now appeal from both the order and judgment.[5]

We first determine whether the court properly considered the statute of limitations issue or whether it should have been left for the arbitrator. Essential to this question is the determination of whether the FAA applies to the agreements of the three family entities. It is well settled, and the parties do not dispute, that if the agreements are governed by the FAA, then the timeliness issue is for the arbitrator, not the court (*see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.*, 4 NY3d 247, 252 [2005]).[6] The FAA governs agreements which "evidenc[e] a transaction involving commerce" (9 USC § 2). In determining if the FAA applies to a contract, the central question is whether the "agreement is a contract evidencing a transaction involving commerce within the meaning of the [FAA]" (*Citizens Bank v Alafabco, Inc.*, 539 US 52, 53 [2003] [internal quotation marks omitted]).

Courts have interpreted the term "involving commerce" broadly (*see id.* at 56; *Allied-Bruce Terminix Cos. v Dobson*, 513 US 265, 270 [1995]). In *Allied-Bruce*, the United States Supreme Court concluded that the purpose of the FAA—to reduce the amount of litigation through the enforcement of arbitration agreements—supports a broad interpretation of the term "involving commerce" (513 US at 275). The Court declined to restrict transactions involving commerce only to those "activities within the flow of interstate commerce" (*id.* at 273 [internal quotation marks and emphasis omitted]). Rather, it found the phrase "involving commerce" to be the equivalent of "affecting commerce," a term associated with the broad application of Congress's power under the Commerce Clause (*id.* at 273-274; *see Citizens Bank*, 539 US at 56).

The Supreme Court reaffirmed this interpretation of "involving commerce" in *Citizens Bank*, stating that "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually in commerce—that is, within the flow of interstate commerce" (539 US at 56 [internal quotation marks

---

5. None of respondents cross-appealed from the motion court's order and judgment sending some claims to arbitration.

6. Bernadette argues that even if the FAA applies, certain choice of law provisions in the various agreements require that the timeliness issue be decided by the court (*see Diamond Waterproofing*, 4 NY3d at 253). Because neither she nor the other respondents raised this issue before the motion court, it is unpreserved for appellate review and we decline to reach it in the interest of justice.

omitted]). Further, the Court held that individual transactions do not need to have a substantial effect on interstate commerce in order for the FAA to apply (*id.*). Rather, as long as there is economic activity that constitutes a general practice "bear[ing] on interstate commerce in a substantial way," the FAA is applicable (*id.* at 57; *see also Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d 471, 478 [2006], *cert dismissed* 548 US 940 [2006]; *ImClone Sys. Inc. v Waksal*, 22 AD3d 387, 387 [1st Dept 2005]).

Based on a broad application of the term "involving commerce," we find that the FAA applies to the agreements at issue. Each of the agreements concerns transactions that affect commerce, and all of the entities are involved in the rental of commercial property. FLIP's rental property, which is located in Florida, is leased by a CVS drug store; Berita owns an interest in an entity that in turn owns a Marriott Hotel; and Seaview owns two commercial buildings. Because commercial real estate can affect interstate commerce, the ownership of and investment in the commercial buildings here, one of which is occupied by an international chain hotel and another which houses a national chain drug store located out-of-state, renders the FAA applicable to these agreements (*see Frumkin v P&S Constr., N.Y., Inc.*, 116 AD3d 602, 603 [1st Dept 2014]).

We reject respondents' claims that the FAA is inapplicable because, in their view, this is a dispute about the mismanagement of the family entities in New York State. The proper inquiry is whether the economic activity in question represents a general practice that bears on interstate commerce in a substantial way (*see Citizens Bank*, 539 US at 56-57; *Diamond Waterproofing*, 4 NY3d at 250 [FAA was applicable "as the *contract* had an effect on interstate commerce" (emphasis added)]). This dispute not only involves substantial commercial transactions covering real properties, some of which are not in this state, but as plaintiffs note, the properties are part of national hotel and drug store chains.

Respondents contend that the FAA does not apply because the agreements themselves do not expressly contemplate transactions involving interstate commerce. This argument seeks to narrow the applicability of the FAA in a manner that the courts have declined to adopt. In *Allied-Bruce*, the Supreme Court faced the question of whether, at the time of agreement, the parties must have contemplated that the contract would evidence a transaction involving substantial interstate commerce or if it was enough that a transaction involving commerce had

occurred in fact (513 US at 277-279). The Court found that requiring parties to include a specific reference to interstate commerce in their agreements would undermine the purpose of the FAA by encouraging further litigation as parties contested whether interstate commerce was contemplated at the time the agreement was executed (*id.* at 278-279). The fact that the agreements here did not expressly contemplate the ownership of commercial real estate that would affect interstate commerce does not, under *Allied-Bruce*, preclude this Court from finding that the FAA applies.[7]

■ Having determined that the issue of statute of limitations should be determined by the arbitrator, we now turn to the question of waiver.[8] Although a party may have a right to arbitrate, the court may determine that a party has waived this right by having participated in litigation (*Matter of Advest, Inc. v Wachtel*, 253 AD2d 659, 660 [1st Dept 1998]; *see Ryan v Kellogg Partners Inst. Servs.*, 58 AD3d 481, 481 [1st Dept 2009]).[9] There is a "strong federal policy favoring arbitration," and waiver should not be "lightly inferred" under the FAA

**7.** Respondents' reliance on *Matter of Laszlo N. Tauber & Assoc. I v American Mgt. Assn.* (304 AD2d 413 [1st Dept 2003]) is misplaced. *Laszlo* predates both *Citizens Bank* and *Diamond Waterproofing*, which reiterated the broad interpretation of the phrase "involving commerce" (*Diamond Waterproofing*, 4 NY3d at 252).

**8.** [3] We reject plaintiffs' contention that the issue of waiver must be sent to arbitration because the agreements at issue reference the AAA rules. In *Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's* (66 AD3d 495 [1st Dept 2009], *affd* 14 NY3d 850 [2010]), this Court held that where the arbitration agreement referred to arbitration under the AAA rules, the question of arbitrability is left to the arbitrators. However, that case did not involve the issue presented here, i.e., whether a waiver occurred as a result of conduct during litigation. Indeed, this Court in a recent case, *21st Century N. Am. Ins. Co. v Douglas* (105 AD3d 463 [1st Dept 2013]), which discussed *Life Receivables*, decided the issue of whether arbitration was waived by engaging in discovery. Furthermore, it is not apparent from the wording of the arbitration clauses that the parties intended to have the specific issue of waiver by litigation conduct decided by the arbitrator (*see generally Zachariou v Manios*, 68 AD3d 539, 539-540 [1st Dept 2009]). Nor would it make sense to do this, given the specific issue here, where the parties sought a ruling from the court as to whether the arbitration or the court action can proceed based on the parties' prior litigation posture.

**9.** [3] There is no merit to plaintiffs' contention that the issue of waiver should be decided by the arbitrator. It is true that *Diamond Waterproofing* contains dicta suggesting that waiver is a matter for the arbitrator to decide (4 NY3d at 252, citing *Howsam v Dean Witter Reynolds, Inc.*, 537 US 79, 84 [2002]). Notwithstanding that language, several circuit courts of appeal have concluded that *Howsam* did not change the long-established rule that courts,

(*Leadertex, Inc. v Morganton Dyeing & Finishing Corp.*, 67 F3d 20, 25 [2d Cir 1995] [internal quotation marks omitted]; *see Rush v Oppenheimer & Co.*, 779 F2d 885, 887 [2d Cir 1985]). A party does not waive the right to arbitrate simply by pursuing litigation, but by "engag[ing] in protracted litigation that results in prejudice to the opposing party" (*Kramer v Hammond*, 943 F2d 176, 179 [2d Cir 1991] [internal quotation marks and citation omitted]).

In determining what constitutes protracted litigation for the purposes of waiver, there is no bright line rule. Rather, the court should consider three factors: (1) the amount of time between the commencement of the action and the request for arbitration; (2) the amount of litigation thus far; and (3) proof of prejudice to the opposing party (*Leadertex*, 67 F3d at 25; *see Matter of Advest*, 253 AD2d at 660-661). Indeed, "[t]he key to a waiver analysis is prejudice" (*Thyssen, Inc. v Calypso Shipping Corp., S.A.*, 310 F3d 102, 105 [2d Cir 2002]). Prejudice may either be substantive prejudice or result from excessive delay or costs caused by the moving party's pursuit of litigation prior to seeking arbitration (*id.* at 105), though cost alone is not sufficient to establish prejudice (*see Blimpie Intl. v D'Elia*, 277 AD2d 69, 70 [1st Dept 2000]). A party may be substantively prejudiced when the other party is attempting to relitigate an issue through arbitration, has participated in substantial motion practice, or seeks arbitration after engaging in discovery that is unavailable in arbitration (*see Leadertex*, 67 F3d at 26).

■ Applying these principles, we find that plaintiffs' actions in this litigation have not prejudiced respondents such that the court must find waiver. Although plaintiffs commenced this action in court, they did not engage in aggressive litigation involving multiple motions addressed to the merits, nor did they pursue state court appeals (*see Kramer*, 943 F2d at 178-179 [defendant found to have waived right to arbitrate where he pursued multiple appeals in two states, including petitioning the Supreme Court for writ of certiorari]). Importantly, the only substantive motion in this action was made by the accountants. Plaintiffs moved only to disqualify defense counsel, relief which could have been sought in arbitration. In any event, this type of

not arbitrators, decide whether a party's litigation conduct constitutes a waiver of arbitration (*see Grigsby & Assoc., Inc. v M Sec. Inv.*, 664 F3d 1350, 1354 [11th Cir 2011]; *JPD, Inc. v Chronimed Holdings, Inc.*, 539 F3d 388, 394 [6th Cir 2008]; *Ehleiter v Grapetree Shores, Inc.*, 482 F3d 207, 217 [3d Cir 2007]; *Marie v Allied Home Mtge. Corp.*, 402 F3d 1, 11-12 [1st Cir 2005]).

motion would be insufficient to constitute waiver under the federal case law. Respondents point to the fact that plaintiffs requested subpoenas while the motion to dismiss was pending, but no actual discovery took place. Therefore, plaintiffs did not obtain any evidence that would not be available to them in arbitration (see *Leadertex*, 67 F3d at 26).

Respondents assert that plaintiffs, by seeking arbitration, are attempting to relitigate the issues they lost before the motion court. However the motion court gave plaintiffs leave to replead with specificity, effectively giving plaintiffs "another bite at the apple," at least as to the sufficiency of the pleadings. Thus, plaintiffs have not received any greater advantage by filing a statement of claim in an arbitration than they would have obtained had they filed an amended complaint. In any event, respondents point to no case finding waiver solely because a party filed an arbitration demand after limited motion practice, particularly where, as here, only one year had passed and no discovery had been exchanged.[10]

The accountants argue that plaintiffs' delay in seeking arbitration is prejudicial because it caused them to experience unnecessary delay and expenses.[11] They stress the amount of time that passed between plaintiffs' filing their complaint and pursuing arbitration and argue that they incurred legal fees in challenging plaintiffs' subpoenas. A delay of one year does not, in itself, amount to protracted litigation (see *Kramer*, 943 F2d at 178-179 [party found to have waived right to arbitrate where four years had passed]), particularly where a delay "was not accompanied by substantial motion practice or discovery" (*Thyssen*, 310 F3d at 105). Further, the expense the accountants incurred in responding to plaintiffs' procedural motion and subpoenas does not, by itself, establish waiver (see *id.*; *Blimpie*, 277 AD2d at 70). Indeed, this Court has found that "[p]retrial expense and delay, without more, does not constitute prejudice sufficient to support" waiver (*Blimpie*, 277 AD2d at 70).

---

10. Respondents' contention that this case is analogous to *Louisiana Stadium & Exposition Dist. v Merrill Lynch, Pierce, Fenner & Smith Inc.* (626 F3d 156 [2d Cir 2010]) is unavailing. In that case, the plaintiffs filed two "essentially identical" actions in federal and state court and filed three complaints before finally seeking arbitration (*id.* at 158).

11. Because the Strianeses were not named as defendants in plaintiffs' original complaint and were not involved in the motion to dismiss, they cannot claim prejudice because of the litigation costs involved in the earlier motion, and any waiver claim based solely on this argument is unavailing as to them.

Although plaintiffs could have sought arbitration sooner, the fact that they did not file a substantive motion or obtain discovery material that would not have been available in arbitration weighs in favor of allowing arbitration to proceed. Indeed, when assessing the question of waiver, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration" (*Leadertex*, 67 F3d at 25). In light of the strong preference for arbitration and the lack of prejudice to respondents, we find that no waiver has occurred (*see Thyssen*, 310 F3d at 104-105).

We have considered respondents' remaining contentions and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Charles E. Ramos, J.), entered September 11, 2013, which, to the extent appealed from, granted defendants' cross motion and intervenors' motions to stay the arbitration to the extent of staying the arbitration of all claims against defendant Schnurr on statute of limitations grounds and staying the arbitration of certain claims against intervenors and the remaining defendants on statute of limitations grounds, and granted plaintiffs' motion to stay the action to the extent of directing the parties to arbitrate the non-time-barred claims, should be reversed, on the law, defendants' cross motion and intervenors' motions denied, plaintiffs' motion granted, and the action stayed pending the arbitration, without costs. The appeal from the order of the same court and Justice, entered July 16, 2013, should be dismissed, without costs, as subsumed in the appeal from the judgment.

TOM, J.P., MOSKOWITZ, DEGRASSE and KAPNICK, JJ., concur.

Judgment, Supreme Court, New York County, entered September 11, 2013, reversed, on the law, defendants' cross motion and intervenors' motions denied, plaintiffs' motion granted, and the action stayed pending the arbitration, without costs. Appeal from order, same court and Justice, entered July 16, 2013, dismissed, without costs, as subsumed in the appeal from the judgment.