Salinger, Kenneth W., J.
This action concerns, among other things, whether Arctic Sand Technologies, Inc. fired Dr. Nadia Shalaby for cause and thus has a right to repurchase her Arctic Sand stock. Dr. Shalaby is the former chief executive officer of Arctic Sand. She was replaced as CEO by Gary Davison in October 2013, and fired in March 2014. John Major served as Chairman of the Board of Directors when Arctic Sand took the actions challenged here by Shalaby. The court (Wilkins, J.) has dismissed five of the nine claims against Arctic Sand and all claims against Davison and Major.
Arctic Sand has moved to compel binding arbitration. It did so only after learning that not all of Shalaby’s claims would be dismissed. Arctic Sand waived any right to compel arbitration by actively litigating this civil action and repeatedly seeking to invoke the court’s jurisdiction to its benefit for six months, before abruptly changing course and attempting to force Shalaby into binding arbitration. The Court will therefore DENY Arctic Sand’s motion to compel arbitration.
Dr. Shalaby, in turn, has moved for leave to file a second amended complaint to add claims that all three defendants discriminated against Shalaby because of her sex and retaliated against Shalaby for making internal complaints about sex discrimination, in violation of G.L.c. 151B, §4. Dr. Shalaby’s second amended complaint alleges facts plausibly suggesting that Defendants took adverse actions against Shalaby because of her sex and retaliated against her because she opposed practices forbidden under this statute. Defendants will not be unfairly prejudiced by the addition of these claims at this time. The Court will therefore ALLOW Dr. Shalaby’s motion for leave to further amend her complaint.
1. Waiver of Arbitration by Litigation Conduct.
1.1. Question for the Court
The Court must decide whether Arctic Sand waived arbitration by litigating this dispute in court. This is presumptively a threshold issue to be decided by a judge, and the parties did not clearly and unmistakably agree that this issue will instead be decided by an arbitrator.
1.1.1. Presumption Under Federal Arbitration Act
Courts must presume that whether a contracting party has waived arbitration by participating in a civil action concerning the same dispute is to be determined by the court. Under Massachusetts law, the presumption is that all questions regarding the waiver of arbitration are to be decided by a judge, not an arbitrator. See O’Brien v. Hanover Ins. Co., 427 Mass. 194, 199 (1998) (“Whether a party has waived arbitration is [usually] a question of arbitrability for the court to determine” (applying the Massachusetts Arbitration Act and quoting Martin v. Norwood, 395 Mass. 159, 162 (1985)). Federal law is now more nuanced, but continues to presume that the particular kind of waiver at issue here is to be decided by a court.
Under the Federal Arbitration Act, “[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and un~ mistakabl[e]’ evidence that they did so.” First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), quoting AT&T Technologies, Inc. v. Communications Wkrs. of America, 475 U.S. 643, 649 (1986). Thus, when it comes to substantive questions of arbitrability, “the usual presumption in favor of arbitration is reversed.” Massachusetts Highway Dept. v. Perini Corp., 83 Mass.App.Ct. 96, 100-01, rev. denied, 465 Mass. 1107 (2013). “In this manner the law treats silence or ambiguity about the question “who (primar *402 ily) should decide arbitrability’ differently from the way it treats silence or ambiguity about the question ‘whether a particular merits-related dispute is arbitra-ble because it is within the scope of a valid arbitration agreement!.]’ ” First Options at 944-45. Since the ques- ' tion of “ ‘who (primarily) should decide arbitrability’ ... is rather arcane],] [a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.” First Options, 514 U.S. at 945. “And given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, [courts should] hesitate to interpret silence or ambiguity on the ‘who should decide arbitrability’ point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.” Id.
More recently, the Supreme Court moved the line drawn in First Options by deciding that under federal law “the presumption is that the arbitrator should decide ‘allegation[s] of waiver, delay, or a like defense to arbitrability.’ ” Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002), quoting Moses H. Cone Mem. Hospital v. Mercury Cortstr. Corp., 460 U.S. 1, 24-25 (1983).[1] The Court explained that such questions are not “issues of substantive arbitrability” that presumptively should be decided by a court, but instead are “issues of procedural arbitrabiity” concerning “conditions precedent to an obligation to arbitrate” that presumptively should be decided by an arbitrator. Id. at 85, quoting Revised Uniform Arbitration Act of 2000, §6, comment 2, 7 U.L.A. 13 (Sup. 2002). The actual holding in Howsam was that the question of whether a claim is barred by the six-year limitations period established in the National Association of Securities Dealers’ Code of Arbitration Procedure “is a matter presumptively for the arbitrator, not for the judge.” 537U.S. at85.The Court reasoned in part that “the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it,” and that courts should “infer that the parties intended the agreement to reflect that understanding,” at least “[i]n the absence of any statement to the contrary in the arbitration agreement.” Id. The Court has applied Howsam to other situations several times. Cf. BG Group, PLC v. Republic of Argentina, 134 S.Ct. 1198, 1207-10(2014) (arbitrator should decide whether plaintiff investor complied with prerequisite, established by treaty governing investments in foreign nations, of first commencing litigation in local court where investment was made); Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003) (arbitrator should decide whether contracts forbid class arbitration). But it has not yet grappled with who should decide whether a party’s litigation conduct constitutes waiver of a contractual right to compel arbitration.
Virtually every appellate court to address the issue has concluded that “the Supreme Court in Howsam and Green Tree did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court,” and not the arbitrator, to decide. Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 14 (1st Cir. 2005); accord Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007); JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 393 (6th Cir. 2008); Grigsby & Assocs., Inc. v. M Securities, Inc., 664 F.3d 1350, 1353-54 (11th Cir. 2011); Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Alabama 2006); Hong v. CJ CGV America Holdings, Inc., 222 Cal.App.4th 240, 255-58 (Cal. 2013); Radil v. Nat’l Union Fire Ins. Co. of Pittsburg, PA, 233 P.3d 688, 694 (Colo. 2010); American General Home Equity, Inc. v. Kestel, 253 S.W.3d 543, 551-52 (Ky. 2008); Good Samaritan Coffee Co. v. LaRue Distributing, Inc., 748 N.W.2d 367, 372-75 (Neb. 2008); Perry Homes v. Cull, 258 S.W.3d 580, 588-89 (Tex. 2008).
The Court is persuaded by the First Circuit’s reasoning in Marie and agrees with this consensus view. The presumption that courts should decide whether a party’s own conduct constitutes waiver of its asserted right to compel binding arbitration has particular force where, as here, that conduct took place in court. “[B]ecause the inquiry into whether a party has waived its right to arbitrate by litigating the case in court heavily implicates ‘judicial procedures’ . . . the court should remain free to ‘control the course of proceedings before it and to correct abuses of those proceedings,’ rather than being required to defer to the findings an arbitrator with no previous involvement in the case.” Ehleiter, 482 F.3d at 218, quoting Marie, 402 F.3d at 13. “[T]he comparative expertise considerations stressed in Howsam and Green Tree argue for judges to decide this issue . . . Judges are well trained to recognize abusive forum shopping.” Marie, 402 F.3d at 13, citing Howsam, 537 U.S. at 85, and Green Tree, 539 U.S. at 452-53. This consensus view is also consistent with the Supreme Court’s observation that “parties to an arbitration contract would normally expect a forum-based decision maker to decide forum-specific procedural gateway matters.” Howsam, 537 U.S. at 86.
1.1.2. No Agreement to Arbitrate Waiver by Litigation Conduct
Arctic Sand argues that it rebutted the presumption that the Court should decide the question of litigation-conduct waiver by showing that (a) Dr. Shalaby agreed in her written employment contract that disputes arising from her employment shall be resolved by binding arbitration “conducted by the Judicial Arbitration and Mediation Services, Inc. (“JAMS”) or its successor, under the then applicable rules of JAMS,” and (b) the current JAMS employment arbitration rules provide that the arbitrator will decide any *403 “(] Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought[.]”
This argument is unavailing. It may be that where a contract provides that arbitration shall be conducted under a particular set of external rules, and those rules “clearly and unmistakably allow the arbitrator to determine her own jurisdiction,” then such questions of arbitrability must be decided by the arbitrator even if the contract itself did not expressly address the issue. See Awuah v. Coverall North America, Inc., 554 F.3d 7, 11 (1st Cir. 2009) (applying Federal Arbitration Act), quoting Apollo Computer, Inc. v. Berg, 886 F.2d 469, 472 (1st Cir. 1989). But this principle is irrelevant here, for two reasons.
Federal law appears to render ineffective any contract provision purporting to delegate the issue of litigation-conduct waiver to an arbitrator. Under the Federal Arbitration Act, a court is only permitted “to stay a court action pending arbitration if ‘the applicant for the stay is not in default in proceeding with such arbitration.’ ” Marie, 402 F.3d at 12, quoting 9 U.S.C. §3. Since “[a] ‘default’ has generally been viewed by courts as including a ‘waiver’... [t]his language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves.” Id. at 13. Although this “language does not appear in [9 U.S.C. §4], the section dealing with attempts to compel arbitration .. . the Supreme Court has cautioned us to interpret sections 3 and 4 of the FAA together.” Id., citing Prima Point Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). This appears to be why the Supreme Judicial Court has indicated, albeit in dictum, that “parties are precluded from contracting to exclude the court from jurisdiction over” the issue of waiver of arbitration. Home Gas Corp. of Massachusetts, Inc. v. Walters of Hadley, Inc., 403 Mass. 772, 774-75 & n.3 (1989), quoting United Nuclear Corp. v. General Atomic Co., 93 N.M. 105, 122, cert. denied, 444 U.S. 911 (1979);[2] accord Ehleiter, 482 F.3d at 221 n.13 (dictum); Marie, 402 F.3d at 14 n.10 (dictum).
In any case, even if the parties could lawfully agree that an arbitrator will decide whether litigation conduct amounts to a waiver of arbitration, they did not do so by referencing this JAMS rule. Given the presumption that courts will decide this question, “[a] shifting of the issue to the arbitrator will only be found where there is ‘clear and unmistakable evidence’ of such an intent in the arbitration agreement [or in arbitration rules adopted by contract). No such evidence exists here.” Marie, 402 F.3d at 14, quoting First Options, 514 U.S. at 944. “The standard in First Options is meant to be a high one, and the normal presumptions in favor of arbitration do not apply.” Id.; accord, e.g., Ehleiter, 482 F.3d at 221 (First Options imposes “onerous standard”). “[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute” (emphasis in original). Granite Rock Co. v. International Broth. of Teamsters, 561 U.S. 287, 297 (2010). “Arbitration is strictly ‘a matter of consent,’ and thus ‘is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration” (emphasis in original). Id. at 299, quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989), and First Options, 514 U.S. at 943.
The JAMS rule does not clearly and unmistakably provide that an arbitrator must decide the parties’ dispute as to whether Arctic Sand’s conduct in this civil action constitutes a waiver of its right to compel arbitration. While the JAMS rule makes clear that the parties agreed to arbitrate “the gateway question of whether the underlying substantive dispute between [the parties] is arbitrable,” nothing in this rule “similarly evinces a clear and unmistakable intent to have an arbitrator decide” whether Arctic Sand waived arbitration by “actively litigat[ing] the underlying dispute in court. There are no references to waiver of arbitration in this or any other provision of the . . . [JAMS rules].” Ehleiter, 482 F.3d at 222 (construing contract providing that “the issue of arbitrability of any claim or dispute” is itself an “arbitrable matter”). “Neither parly should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so. The issue of who would decide such a question is an ‘arcane’ one that employees are unlikely to have considered unless clearly spelled out by the employer.” Marie, 402 F.3d at 15 (construing contract providing that “the arbitrability of any such controversy or claim” will be decided by arbitrator), quoting First Options, 514 U.S. at 945.
1.2. Finding of Waiver
The Court finds that Arctic Sand waived any contractual right to arbitrate Dr. Shalaby’s claims by deliberately waiting six months before seeking to compel arbitration, and by actively litigating the case in Superior Court in the meantime. Arctic Sand did not promptly move to compel arbitration, but instead moved to “dismiss the Amended Complaint with prejudice” pursuant to Mass.R.Civ.P. 12(b)(6). It made no attempt to invoke its alleged contractual right to binding arbitration until after it learned that its motion to dismiss was not completely successful. Under the circumstances of this case, the Court finds that Arctic Sand has waived arbitration by its litigation conduct.
‘The right to arbitration may be lost, as any contractual right which exists in favor of a party may be lost[,] through a failure properly and timely to assert the right.” Home Gas, 403 Mass. at 775 (internal quotation marks and citation omitted). “[A] party must ‘proceed with dispatch in seeking arbitration’ if it does not wish to waive that right.” Id., quoting Jones Motor *404 Co. v. Chauffeurs, Teamsters & Helpers, Local No. 633 of N.H., 671 F.2d 38, 42 (1st Cir.), cert. denied, 459 U.S. 943 (1982), quoting in turn E.T. Simonds Constr. Co. v. Local 1330, Int’l Hod Carriers, 315 F.2d 291 (7th Cir. 1963).
“Where we are dealing with a forfeiture by inaction (as opposed to an explicit waiver), the components of waiver of an arbitration clause are undue delay and a modicum of prejudice to the other side.” Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003). Thus, “a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) ‘delaying its assertion to such an extent that the opposing party incurs actual prejudice.’ ” Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713 (6th Cir. 2012), quoting Hurley v. Deutsche Bank Trust Co. Ams., 610 F.3d 334, 338 (6th Cir. 2010), quoting in turn O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003). All of the more specific factors that courts consider in deciding whether a party has waived its right to arbitration fall within these more general categories. Cf. Home Gas, 403 Mass. at 775-76. “(T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts.” Tyco Int’l Ltd. v. Swartz (In re Tyco Int’l Ltd. Sec. Litig.), 422 F.3d 41, 46 (1st Cir. 2005); accord, e.g., Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 626 F.3d 156, 159 (2d Cir. 2010); In re Mirant Corp., 613 F.3d 584, 589 (5th Cir. 2010).
1.2.1. Findings as to Undue Delay
Dr. Shalaby filed this action on April 8, 2014, and served process on Arctic Sand the next day. Arctic Sand actively litigated this case for months, waiting until September 19, 2014, to assert — as an affirmative defense in the answer filed that day — that the Court lacks jurisdiction over Shalaby’s claims because they are all “subject to a mandatory arbitration clause.”[3] Arctic Sand waited until October 2, 2014, to serve its motion to compel arbitration and dismiss the remaining claims in the amended complaint.
The Court finds that Arctic Sand deliberately delayed moving to compel arbitration because it first wanted to press its motion to dismiss in Superior Court. Arctic Sand filed its motion to dismiss on July 16, 2014. By moving to dismiss all of Shalaby’s claims under Mass.R.Civ.P. 12(b)(6), Arctic Sand sought an adjudication and dismissal on the merits that would have res judicata effect. See Mestek, Inc. v. United Pacific Ins. Co., 40 Mass.App.Ct. 729, 731 (1996). The Court finds that by filing this motion Arctic Sand made a deliberate choice to seek “an immediate and total victory in the parties’ dispute” in Superior Court, and “to see how the case was going in . . . court before deciding whether it would be better off there or in arbitration.” Hooper v. Advance America, Cash Advance Centers of Missouri, Inc., 589 F.3d 917, 922 (8th Cir. 2009). Arctic Sand was happy to litigate Shalaby’s claims in the Superior Court so long as it thought it could obtain a quick judgment in its favor on the merits. It only moved to compel arbitration after its motion to dismiss on the merits was denied in part, in a 16-page memorandum of decision dated September 3, 2014. In essence, Arctic Sand “ ‘wanted to play heads I win, tails you lose,’ which ‘is the worst possible reason’ for failing to move for arbitration sooner than it did.” Hooper, 589 F.3d at 922, quoting Cabinetree of Wisconsin, Inc. v. Krafmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995).
Arctic Sand “acted inconsistently with its right to arbitration when it filed its motion to dismiss before its motion for arbitration,” since the “motion to dismiss was extensive and exhaustive, and substantially invoked the litigation machinery” by seeking dismissal with prejudice of all of Shalaby’s claims. Id. at 921 (defendant waived arbitration by moving to dismiss claims under Fed.R.Civ.P. 12(b)(6), and waiting until that motion was denied in part to file separate motion seeking to compel arbitration). “A party waives arbitration by seeking a decision on the merits before attempting to arbitrate.” Mirant Corp., 613 F.3d at 589 (5th Cir.) (same), quoting Petroleum Pipe Americas Corp. v. Jindal Saw Ltd., 575 F.3d 476, 480 (5th Cir. 2009); accord, In re Pharmacy Ben. Managers Antitrust Litigation, 700 F.3d 109, 118-22 (3d Cir. 2012) (same); St. Mary’s Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc., 969 F.2d 585, 589-90 (7th Cir. 1992) (same).
Arctic Sand had no legitimate reason for asking the Superior Court to decide the legal merits of Dr. Shalaby’s claims before moving to compel arbitration. If Arctic Sand had wished, it could have first moved to compel arbitration and then, if successful, filed a motion to dismiss with the arbitrator. Rule 18 of the JAMS Employment Arbitration Rules provides that the arbitrator may permit any party “to file a Motion for Summary Disposition of a particular claim or issue[.]” Instead of doing that, however, Arctic Sand decided first to try its luck in asking the Superior Court to rule that none of Shalaby’s claims has legal merit.
In addition to moving to dismiss Dr. Shalaby’s claims and then filing its own counterclaim, Arctic Sand also invoked the court’s jurisdiction by asking it to resolve a discovery dispute. As the Court observed in its April 14, 2014, order, when this action was first filed the parties came “to court with a discovery dispute disguised as a motion for a preliminary injunction.” The parties had been unable to agree on protocols for the preservation and discovery of information on a laptop computer, an external hard drive, and an iPhone. Dr. Shalaby contended that all three devices contained personal files and information that Arctic Sand was not entitled to see, that she owned the hard drive and phone and was entitled to have *405 them returned, and that the court should order Defendants to return the hard drive and phone and not to access or make use of any information or data residing on any of these devices. Arctic Sand did not respond by moving to compel arbitration. Instead, it argued that all three devices contained company information and files that it owns and controls, that it was entitled to keep and access all three devices, and that the court should deny the preliminary injunction on the merits. In April the Court ordered that Arctic Sand could have its counsel hold the laptop but must give the hard drive and phone to Shalaby’s counsel for safekeeping, that the parties must keep these devices safe and ensure that no files or information stored on them is lost or altered, that the parties must negotiate a protocol for a forensic investigation to determine which files on these devices belonged to Arctic Sand and how each category of file should be used, shared, disposed of, or destroyed, and also must negotiate an appropriate confidentiality order. On May 19, 2014, Arctic Sand and Shalaby filed a joint motion asking the court to resolve some issues concerning the document review protocol, and to approve an agreed-upon confidentiality order. The court resolved the issues raised by Arctic Sand regarding the protocol at a hearing held on June 5,2014. The parties then worked to implement this protocol. On November 13, 2014, they filed a joint status report stating that they had resolved most of the discovery issues raised by Shalaby’s motion and “continue to work cooperatively to complete the data separation process.” At no time during this process did Arctic Sand ever suggest that the Court’s order was invalid because Shalaby’s claims were subject to compulsory arbitration.
Similarly, when Dr. Shalaby moved to compel the production of documents in July 2014, Defendants opposed the motion on the ground they were seeking to dismiss this action for failure to state a claim upon which relief can be granted. But Arctic Sand never suggested that Shalaby was not entitled to discovery because she was instead required to arbitrate her claims.
In sum, the Court finds that, when considered together, these circumstances demonstrate that Arctic Sand “acted completely inconsistently with its right to arbitration.” See Johnson Assocs., 680 F.3d at 719.
1.2.2. Findings as to Prejudice.
“This leaves the second part of the waiver inquiry: prejudice. ‘Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.’ ” Johnson Assocs., 680 F.3d at 719-20, quoting Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). ‘To be sure, prejudice is essential for a waiver — but the required showing is ‘tame at best.’ Some degree of prejudice ordinarily may be inferred from a protracted delay in the assertion of arbitral rights when that delay is accompanied by sufficient litigation activfiy.” Joca-Roca Real Estate, LLC v. Brennan, No. 14-1353, 2014 WL 6737103, *3 (1st Cir. Dec. 1, 2014), quoting Rankin, 336 F.3d at 14. The longer the delay and the more extensive the litigation-related activities that have taken place, the stronger the inference of prejudice becomes.” Id. at *4.
The Court finds that Arctic Sand’s “failure to pursue the demand for arbitration early in the proceedings caused the parties and the court to expend a great deal of time, expense, and resources” on litigating this matter in court, “and caused the opportunity for an ‘expeditious alternative to litigation’ to be lost.” Home Gas, 403 Mass. at 776-77 (holding that party waived arbitration as a result), quoting Danvers v. Wexler Constr. Co., 12 Mass.App.Ct. 160, 163 (1981). If Arctic Sand’s motion to compel arbitration had substantive merit, then its six-month delay in filing that motion— while Arctic Sand was vigorously pressing its Rule 12(b)(6) motion to dismiss and engaging in forensic investigation and discovery of electronic devices— forced Dr. Shalaby to incur unnecessary expense and delay.
In sum, the Court finds that Arctic Sand has waived any right to compel arbitration because it engaged in a deliberate and tactical six-month delay in moving to compel arbitration that imposed far more than a "modicum of prejudice” upon Dr. Shalaby. See Rankin, 336 F.3d at 12.
2. Adding Claims Under G.L.c. 151B
Since the Court has determined that Arctic Sand waived any right to compel arbitration, it need not decide any of the myriad issues raised by the parties concerning the potential arbitrability of Dr. Shalaby’s proposed new claims under G.L.c. 15 IB. None of the other grounds upon which Defendants oppose the motion to amend the complaint has any merit.
2.1. Discrimination Claim
Dr. Shalaby’s second amended complaint states a viable claim for sex discrimination because it alleges facts plausibly suggesting that she was treated more harshly and then fired because of her sex.
2.1.1. Chapter 15 IB as Exclusive Remedy
Defendants’ assertion that Dr. Shalaby should be judicially estopped from asserting a sex discrimination claim under c. 15IB because she avoided dismissal of her claim for breach of the employment agreement is without merit. Defendants misread the law when they assert that “c. 151B claims and contractual claims based on the same course of action are mutually exclusive.” It is true that Shalaby could “not maintain a common-law breach of contract claim for” Arctic Sand’s “allegedly discriminatory dismissal of [her] because any such claim would be preempted by G.L.c. 151B.” Gasior v. Massachusetts Gen’l Hosp., 446 *406 Mass. 645, 651 n.8 (2006). But Count I of the amended complaint does not allege that Arctic Sand breached the employment agreement by firing Dr. Shalaby because of her sex. Instead, it alleges that the “termination of Dr. Shalaby’s employment with Arctic Sand for supposed ‘insubordination’ was without factual or legal basis, and accordingly, in material breach of the Key Employment Agreement.” Since this contract claim is not based on allegations of discrimination that would violate G.L.c. 151B, it is not preempted by that statute. See Comey v. Hill, 387 Mass. 11, 20 (1982) (c. 151B does not foreclose common-law claims grounded in tort and contract principles established prior to adoption of c. 151B).
The fact that Dr. Shalaby’s contract claim is based on an allegation that her firing was pretextual does not mean it duplicates her sex discrimination claim under c. 151B. With respect to the latter claim, if the jury were to find that the stated reason for firing Shalaby were pretextual, then it could reasonably infer that Arctic Sand “acted with a discriminatory animus" in violation of c. 151B. Haddad v. Wal-Mart Stores, Inc. (No. 1), 455 Mass. 91, 98 (2009). But a jury could instead find that Dr. Shalaby’s termination was pre-textual, and thus in violation of her employment contract, without also inferring that Arctic Sand fired Shalaby because of her sex. The contract claim is independent from, and thus not preempted by, the statute. The fact that Shalaby’s contract claims and her claims under c. 15 IB arise from the same course of conduct by the Defendants does not mean that her common-law claims are preempted by c. 15IB.
2.1.2.No Replacement of Dr. Shalaby
Defendants are also mistaken when they assert that Dr. Shalaby’s sex discrimination claim is futile because she does not allege that Arctic Sand sought to replace her with someone else. A decision to eliminate someone’s job and terminate her employment will violate G.L.c. 15 IB if done because of the employee’s sex or other statutorily-protected status, even if the employer never fills the position with another person. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 41-45 (2005) (sex discrimination); Porio v. Department of Revenue, 80 Mass.App.Ct. 57, 61-62 (2011) (age discrimination). “Generally, a plaintiff who is terminated from her position establishes a prima facie case of discrimination by producing evidence that she is a member of a class protected by G.L.c. 15 IB; she performed her job at an acceptable level; she was terminated; and her employer sought to fill her position by hiring another individual with qualifications similar to hers.” Sullivan, 444 Mass. at 41. Where an employee’s job is eliminated, either as part of a larger reduction in force or as a stand-alone change in staffing levels, she “may satisfy the fourth element of her prima facie case by producing some evidence that her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination.” Id. at 45.
“(T]he plaintiffs initial burden of establishing a prima facie case” in asserting a claim of employment discrimination under c. 15 IB “is not intended to be onerous.” Sullivan, 444 Mass. at 45. Rather, “(i]t is meant to be a ‘small showing” that is ‘easily made.’ “ Id., quoting Che v. Massachusetts Bay Transp. Auth., 342 F. 3d 31, 38 (1st Cir. 2003), and Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003). Thus, a plaintiff who alleges facts plausibly suggesting that she was ” ‘singled out for discharge’ because of membership in a protected class ‘should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case.’ “ Id., quoting Barnes v. Gen Corp., Inc., 896 F.2d 1457, 1465-66 (6th Cir.), cert. denied, 498 U.S. 878 (1990).
2.2.Retaliation Claim
Nor have Defendants shown that Dr. Shalaby’s retaliation claim would be futile. Defendants’ assertion that the proposed second amended complaint “fails to allege that Plaintiff engaged in any activity that c. 15 IB protects” is incorrect. The proposed complaint alleges in paragraph 161 that Defendants took adverse action against Shalaby in part because they wanted to punish her for raising concerns within Arctic Sand about biased treatment of senior executives because of their sex. The fact that Shalaby makes no allegation that she was retaliated against for filing a formal charge with the Massachusetts Commission Against Discrimination is irrelevant. Retaliating against someone for making internal complaints in good faith regarding perceived gender discrimination among employees violates G.L.c. 151B, §4(4), even if the alleged retaliation occurs before the plaintiff has filed a formal charge with the Massachusetts Commission Against Discrimination. See King v. City of Boston, 71 Mass.App.Ct. 460, 474 (2008); Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 664-65 (2004); see also Smith v. Winter Place, LLC, 447 Mass. 363, 367-68 (2006) (same as to anti-retaliation provision of the Wage Act, G.L.c. 149, §148A).
Furthermore, the retaliation claim is legally viable even though Dr. Shalaby makes no allegation that Arctic Sand replaced her with someone else. A claim of unlawful retaliation can be based on allegations and evidence that an employer’s decision to eliminate plaintiff s job “was motivated by retaliatory animus” in violation of G.L.c. 151B, §4(4), even if no one is hired to replace the plaintiff. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 388-89 (2005), cert. denied sub nom Globe Newspaper Co., Inc. v. Ayash, 546 U.S. 927 (2005).
2.3.Delay in Seeking Leave to Amend
Defendant’s assertion that Dr. Shalaby waited too long to assert claims under G.L.c. 151B is without merit. Defendants have not shown that they will suffer any unfair prejudice if Shalaby is allowed to further *407 amend her complaint at this time. It is hard to see how Defendants could be unfairly prejudiced by the amendment since “[t]rial [is] not imminent,” “[d]iscov-eiy is far from complete,” and the proposed claims under c. 15 IB are “essentially based on the same facts” as the existing claims. See Sullivan v. Iantosca, 409 Mass. 796, 800 (1991) (reversing denial of motion to amend complaint under similar circumstances). The fact that the prior claims against Mr. Davison and Mr. Major have been dismissed does not mean that they will be unfairly prejudiced if new claims are added against them under G.L.c. 151B. Cf. Manfrates v. Lawrence Plaza Ltd. Partnership, 41 Mass.App.Ct. 409, 413-15, rev. denied, 423 Mass. 1114 (1996) (prior third-party defendant not unfairly prejudiced by amendment of complaint to add direct claim against it six years into case, where party had long known about and actively participated in case, trial was not imminent, and party had time to conduct additional discovery).
Since leave to amend a pleading “shall be freely given when justice so requires,” Mass.RCiv.P. 15(a), under Massachusetts law mere delay standing alone cannot justify denying Shalaby’s motion to amend. See Vakil v. Vakil, 450 Mass. 411, 418-20 (2008) (reversing denial of motion to amend answer, holding it was abuse of discretion to deny motion where delay did not unfairly prejudice opposing party). Defendants’ reliance on allegedly contrary holdings by federal courts of appeals and district courts is misplaced. Cf. Commonwealth v. Pon, 469 Mass. 296, 308 (2014) (Massachusetts courts “are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law” (quoting Commonwealth v. Montanez, 388 Mass. 603, 604 (1983)).
3. Cross Motions Regarding Document Requests
Having determined that Dr. Shalaby is entitled to press her remaining claims as well as her additional claims under G.L.c. 15IB, the Court also finds that Defendants’ objections to her pending document requests are without merit. The Court will therefore ALLOW Shalaby’s motion to compel production of documents, except to the extent it seeks an award of fees and costs, and DENY Defendants’ cross motion for a protective order and an award of fees and costs.
ORDER
Defendant Arctic Sand’s motion to compel arbitration and dismiss this action is DENIED. Plaintiffs motion for leave to file a second amended complaint is ALLOWED. The clerk’s office shall separately docket the original second amended complaint attached to Plaintiffs motion to amend (doc. no. 34) at Tab 1.
In addition, Plaintiffs motion to compel production of documents is ALLOWED IN PART on the merits: Defendants shall produce all responsive, non-privileged documents in their possession, custody, or control. Plaintiffs motion to compel is DENIED IN PART to the extent it seeks an award of fees and costs. Defendant’s cross motion for fees and protective order is DENIED.
A litigation control conference will be held on January 13, 2015, at 2:00 p.m. Counsel for all parties shall attend and be prepared to discuss: (1) whether the parties will agree to participate in mediation and attempt in good faith to resolve their dispute with the assistance of a neutral mediator; (2) whether the parties are on track to complete all depositions and serve all written discovery by February 2, 2015, and if not, how the current tracking order in this case should be revised; and (3) the scheduling of a final pre-trial conference.

 Moses H. Cone Mem. Hosp. did not address this presumption issue, because the hospital did “not contest the substantive correctness of the Court of Appeals’ holding on arbitrability.” 460 U.S. at 29. The “principal issue” decided in that case was that a federal district court should not stay a petition to compel arbitration pending resolution of a concurrent state court suit. Id. at 13-28.

Like the First Circuit in Marie, the Supreme Court of New Mexico reasoned in United Nuclear Corp. that litigation-conduct waiver constitutes a “default” within the meaning of section 3 of the Federal Arbitration Act that must be decided by a court. See 93 N.M. at 114, 122.

The Court agrees with Arctic Sand that there was no inconsistency between asserting this affirmative defense and simultaneously asserting a counterclaim under the parties’ Assignment of Inventions Agreement, because the arbitration clause of the employment agreement specifies that this clause “shall not apply to any issue or dispute arising under” the inventions agreement.