Lang, James F., J.
Planet Fitness Holdings, LLC (“Planet Fitness” or “the Company”) hired the plaintiff, Jayne Conway (“Plaintiff’ or “Conway”), as its Chief Financial Officer (“CFO”) in April 2010. Approximately eighteen months later, Conway was fired. Plaintiff has since brought suit against Planet Fitness, Pla-Fit Franchise, LLC, Michael Grondahl, Marc Grondahl, Christopher Rondeau, and Richard Moore (collectively, “Defendants”), alleging that Planet Fitness misrepresented material facts during their settlement negotiations. Conway asserts claims for fraud, negligent misrepresentation, unjust enrichment, and related contract claims, as well as for equitable relief in the form of declaratory judgment and the imposition of a constructive trust.
The matter is currently before the court on Defendants’ Motion to Compel Arbitration and Stay the Proceedings. On May 12, 2015, the court heard argument on the motion. For the reasons set forth below, Defendants’ motion is DENIED.
BACKGROUND[2]
In considering Defendants’ motion, the court looks to the record as a whole, considering the papers and exhibits submitted by the parties, as well as arguments made in memoranda of law and during appearances at court hearings. See G.L.c. 251, §2(a) (courts shall “summarily” determine whether or not to stay proceedings and order arbitration). The court reserves certain facts for later discussion.
Upon accepting the CFO position in 2010, Conway entered into three separate contracts with Planet Fit *687 ness: the Restricted Interest Agreement (“RIA”), the Limited Liability Company Agreement (“LLCA”), and the Employment Agreement (“EA”). The RIA granted Plaintiff equity equal to a 1.5% profit interest in the Company. It firrther contained a “Dispute Resolution” section providing that Conway and Planet Fitness “agree that all controversies, disputes, and claims among the parties hereto arising out of this Agreement, and all questions concerning the validity, interpretation and enforcement of this Agreement, shall be determined by arbitration ..." The LLCA likewise indicated that disputes among the Company’s members — which include Plaintiff and all Defendants— "shall be resolved by arbitration among the parties." Finally, the EA provided, “Any controversy, dispute or claim arising out of or in connection with this Agreement or breach thereof will be settled by final and binding arbitration . . . Any disagreement as to whether a particular dispute is arbitrable under this Agreement will itself be subject to arbitration ...” Plaintiff does not challenge the validity of these three contracts.
Sometime after Conway’s termination in November 2011, she and Planet Fitness entered into settlement negotiations regarding, among other things, her equity interest in the Company. The parties drafted a settlement agreement that included a “Release” section, providing that Conway “releases and forever discharges the Company, its Affiliates and all of their respective [agents] . . . from any and all. . . causes of action, rights, and claims,” in consideration for “special payments provided.” It also contained a “Selection Clause,” which indicated that the agreement and any disputes arising therefrom would be “governed by and construed in accordance with the laws of the State of New Hampshire ...”
Conway signed the agreement on January 25, 2013, accepting approximately $500,000 in settlement compensation. However, she subsequently learned that Planet Fitness’s fair market value was substantially more than it had represented during the negotiation process, which allegedly induced her to accept a valuation and settlement of her membership interest that was less than the amount she would have demanded had she known otherwise. On May 10, 2013, Plaintiff filed a complaint with this court, asserting that Defendants had materially misrepresented the worth of her interest in the Company and demanding relief on that basis.
Five months later, on October 21,2013, Defendants filed a Motion to Dismiss. In this motion, Defendants challenged Plaintiffs claims under Mass.R.Civ.P. 12(b)(6), arguing that Conway had released Defendants from any and all legal claims pursuant to the terms of the settlement agreement, supra. They further argued that the proper forum for any dispute was a New Hampshire court, also pursuant to the terms of the settlement agreement. Finally, Defendants maintained that Plaintiffs claim to invalidate (rescind) the contract was improper as a matter of law, because she had retained the benefit of that bargain — the $500,000 in compensation.
After a hearing on the matter, the court (Kirpalani, J.) issued a thirteen-page decision denying Defendants’ motion.[3] The court determined that the language of the settlement agreement clearly provided that substantive matters were governed by New Hampshire law. Nonetheless, after a review of New Hampshire caselaw, the court held that Massachusetts was a proper forum for litigation, and it therefore retained jurisdiction over Plaintiffs action. The court also acknowledged that Conway’s settlement agreement contained a release clause, but it ruled that Plaintiffs fraud claim was a valid defense to enforcing such contract provisions, and, therefore, that dismissal based on any release clause would be premature.
On July 11, 2014, following the court’s rejection of the Motion to Dismiss, Defendants filed their Answer to Plaintiffs complaint. Among their affirmative defenses, Defendants listed, ‘This matter should have been submitted to arbitration, pursuant to [the EA and the RIA].” They did not bring a motion to compel arbitration at that time.
On August 6, 2014, Defendants filed a motion for relief from the court’s earlier decision on their motion to dismiss. Specifically, Defendants argued that they had requested review of Plaintiffs retention of the $500,000 in compensation while she simultaneously challenged the settlement agreement. They insisted that it was improper for Conway to proceed with her allegations that the contract was invalid while keeping her benefit of the bargain. Agreeing that it had declined to rule on the issue in its previous decision, the court (Kirpalani, J.) allowed Defendants’ motion and ordered Plaintiff to deposit $500,000 with the court. Conway subsequently complied with the court’s order, depositing an amount equal to what she received from Planet Fitness under the 2013 settlement agreement into a client account controlled by Plaintiffs counsel.
The parties conducted some initial discovery through the fall of 2014. For example, after filing a joint motion with Defendants to amend the tracking order in August, Plaintiff served her Mass.R.Civ.P. 34 requests on Defendants and noticed the depositions of each defendant, as well as of a third-party witness. Defendants served their own Rule 34 requests on Plaintiff, noticed certain depositions, answered Plaintiffs first set of interrogatories, and produced some documents. In November, the parties filed a joint motion to extend the discovery deadline, indicating that while they “ha[d] commenced discovery,” they wanted time to attempt to resolve the matter through mediation. The court (Drechsler, J.) allowed their request and extended the deadline for discovery to February 20, 2015.
*688 When mediation attempts failed, the parties continued with discovery. At the end of December,-Plaintiff served responses to Defendants’ previous document requests and provided a second notice of certain depositions. In early January, Defendants served their first set of interrogatories on Plaintiff. Defendants filed the present Motion to Compel Arbitration and Stay the Proceedings on March 6, 2015.
DISCUSSION
Defendants point to the various arbitration provisions in each of Conway’s three employment agreements — the RIA, the LLCA, and the EA — and argue that the parties have agreed to litigate Plaintiffs claims in arbitration. They maintain that those arbitration clauses apply to each of Plaintiffs allegations and assert that the parties must proceed before an arbitrator. Conway disputes that the arbitration provisions are applicable to her case. She further argues that even if her claims were arbitratable under the various agreements, Defendants impliedly waived their right to arbitrate by engaging in extensive litigation in the courts.[4] Defendants, in turn, assert that they have not waived arbitration and that, in any event, such a decision is not for this court to determine, but rather should be left to an arbitrator as a matter of law. The court addresses these arguments below.
I. The Court Determines Waiver
In 1985, the Massachusetts Supreme Judicial Court (“SJC”) explicitly stated, “Whether a party has waived arbitration is a question of arbitrability for the court to determine.” Martin v. Norwood, 395 Mass. 159, 162 (1985). The SJC upheld this principle years later, in Home Gas Corp. of Massachusetts v. Walter’s of Hadley, Inc., 403 Mass. 772 (1989) (“Home Gas”). Id. at 775 (“It is the province of the court to determine whether there has been a default in pursuing arbitration”) (internal quotations omitted). Since then, Massachusetts courts have been deciding whether or not parties have waived their rights to arbitration. See e.g., O’Brien v. Hanover Ins. Co., 427 Mass. 194, 198-99 (1998) (waiver issues are correctly referred to the Superior Court); Francis Harvey & Sons v. Trustees of Amherst Col., 5 Mass. L. Rptr. 57, 1996 LEXIS 603, at *3 (Mass.Super. 1996) (‘The determination of whether a parly has waived arbitration rests with the court”); Hyppolite v. Boston, 1 Mass. L. Rptr. 31, 1993 LEXIS 220, at *15-17 (Mass.Super. 1993) (applying waiver factors and rejecting defendant’s motion to compel arbitration). The federal courts within the First Circuit have likewise traditionally decided waiver issues. See e.g., Creative Solutions Group v. Pentzer Co., 252 F.3d 28, 32-34 (1st Cir. 2001); Page v. Moseley, Hailgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 293-95 (1st Cir. 1986); Hurlbut v. Gantshar, 674 F.Sup. 385, 387-89 (D.Mass. 1987).
In its 2002 decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) (“Howsam"), the United States Supreme Court seemingly upended this traditional procedure. There the Court examined a rule incorporated into the parties’ contract imposing time limits on the right to arbitrate and held that consideration as to whether or not a party had violated such a procedural rule was properly for an arbitrator, not a court. Id. at 85. Reasoning that certain “gateway matters” should generally be decided by an arbitrator where the parties expected as much, the Court stated, “[T]he presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability” (emphasis added). Id. at 84.
Defendants rely on this dicta in Howsam to assert that Plaintiffs claim that they have waived their contractual right to arbitration by litigation conduct must be decided by an arbitrator. No Massachusetts appellate court has yet addressed whether, post-Howsam, the question remains for the court or whether it must now must be presented to an arbitrator. Most federal appellate courts have determined, however, that the Supreme Court did not intend to change the general practice of many jurisdictions, where courts traditionally decided waiver challenges.[5] See e.g., JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 394 (6th Cir. 2008) (holding that Howsam did not disturb the traditional rule that courts resolve claims of waiver by litigation conduct). Accord Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3rd Cir. 2007); Marie v. Allied Home Mtge. Corp., 402 F.3d 1, 15 (1st Cir. 2005); Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed.Appx. 462, 464 (5th Cir. 2004). But see National Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003) (holding, pursuant to Howsam, that the issue of waiver must be presented to an arbitrator).
The First Circuit was one of the first federal appellate courts to apply Howsam to cases in which a party asserts that its opponent waived its right to arbitration by litigation conduct. See Marie, 402 F.3d at 3. The Marie court acknowledged the long history in the First Circuit of judges, rather than arbitrators, deciding litigation-related waiver claims. Id. at 11-12. While noting the Supreme Court’s dicta in Howsam, the First Circuit stressed the “important policy reasons why a court and not an arbitrator should decide waiver issues,” including the comparative expertise between the two factfinders. Id. at 13. The Court reasoned that judges are better trained to recognize forum-shopping, in a better position to evaluate the extent of litigation conducted in the courts, and, ultimately, “[have] power to control the course of proceedings before [them] and to correct abuses of those proceedings.” Id. The Court further recognized that “sending waiver claims to the arbitrator would be exceptionally inefficient” where an arbitrator’s decision that a party waived arbitration would simply return the case to the trial court without having moved the dispute any further towards resolution. Id. For these reasons, the Marie court held that Howsam did not reverse the traditional rule that “waiver by conduct, at least where due to litigation-re *689 lated activity, is presumptively an issue for the courts. ” Id. at 14.
A Massachusetts Superior Court (Salinger, J.) recently conducted a thorough review of postHowsam jurisprudence and adopted the reasoning of the Marie court. See Shalaby v. Arctic Sand Techs., Inc., 32 Mass. L. Rptr. 401, 2014 LEXIS 191, at *3-7 (Mass.Super. 2014). Judge Salinger noted the overwhelming consensus across federal and state appellate courts nationwide in upholding their historical practices of determining conduct-related waiver claims, rather than sending them to an arbitrator. Id. at *6 (“Virtually every appellate court to address the issue has concluded that the Supreme Court in [Hoursam] did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court, and not the arbitrator, to decide”) (internal quotations omitted). Judge Salinger further reasoned that evaluating whether or not a party has waived its right to arbitrate by litigation conduct implicates “judicial procedures,” which are most efficiently and effectively resolved by judges. Id. at *6-7. Agreeing with the Marie court that Howsam stressed the comparative expertise of judges and arbitrators in deciding issues of arbitrability, and quoting the Howsam court’s reasoning that “parties to an arbitration contract would normally expect a forum-based decision maker to decide forum-specific procedural gateway matters,” id. at *7 (internal quotations omitted), Judge Salinger held that judges should decide whether a party has waived its right to arbitration by its litigation conduct. Id. at *6.
Here, Plaintiff asserts that Defendants have waived any contractual right to arbitrate because they have conducted extensive litigation in court. Historically, Massachusetts law presumed that such a claim was for this court to review. Notwithstanding the Supreme Court’s dicta in Howsam suggesting otherwise, the overwhelming majority of federal and state courts to address the issue have determined that Massachusetts’s traditional practice is proper. This court is persuaded by the reasoning of the various authorities cited above. Thus, in the interest of efficiency and effectiveness, this court will determine whether or not Defendants have waived arbitration by their conduct.
II. Defendants Have Waived Their Right to Arbitration Under the Circumstances
Massachusetts legislative and judicial policies generally favor enforcement of arbitration agreements. See Miller v. Cotter, 448 Mass. 671, 683-84 (2007). Nonetheless, as with any contractual agreement, the right to arbitrate may be waived. Home Gas, 403 Mass. at 775. Where, as here, one party insists that another has waived its arbitration right by conduct, the court must look to the totality of the circumstances to determine whether the defaulting party has acted inconsistently with its arbitration right. Martin, 395 Mass. at 162. “ITlhere is no bright-line rule for awaiver of arbitral rights, and each case is to-be judged on its particular facts.” Tyco Int’l Ltd. v. Swartz, 422 F.3d 41, 46 (2005). The SJC has noted several factors for courts to address when determining an issue of waiver: (1) whether the parties substantially engaged in litigation before the intent to arbitrate was communicated; (2) the length of delay in asserting a right to arbitrate; (3) whether the moving party filed a counterclaim or otherwise invoked the court’s jurisdiction; (4) whether important intervening steps, such as discovery, have taken place; and (5) whether the non-moving parly has been “affected, misled, or prejudiced” by the moving party’s delay in requesting a stay and order to arbitrate. Home Gas, 403 Mass. at 776.
Here, Plaintiff filed her complaint on May 10, 2013. Defendants did not move to compel arbitration until March 6, 2015, nearly two years later. In the interim, Defendants substantively engaged the jurisdiction of the court on multiple occasions. First, rather than asserting a right to arbitration immediately upon being served with Plaintiffs lawsuit, Defendants requested that the court dismiss Conway’s claims as meritless, pursuant to Rule 12(b)(6). In the alternative, Defendants demanded that the case be transferred to a New Hampshire court, as the proper forum for disputes under the settlement agreement. Even while they asked the court to either dismiss the case altogether or relocate the litigation to a new jurisdiction, Defendants did not move to arbitrate Plaintiffs claims. Defendants’ motion necessitated a hearing, two months of judicial review, and a thirteen-page written decision.
After the court rejected their request to either remove the case to New Hampshire or to dismiss it entirely, Defendants filed an answer. In the eight of eighteen listed affirmative defenses, they stated, ‘This matter should have been submitted to arbitration, pursuant to Section 4.4 of the Employment Agreement (Exhibit A to the Complaint) and Section 8(j) of the Restricted Interest Agreement (Exhibit C to the Complaint).” Defendants did not request to stay the proceedings in order for the parties to proceed to arbitration. Indeed, Defendants did not serve Conway with any motion to compel arbitration for the following six months, during which time they engaged in discovery procedures (e.g., filing multiple motions to extend the discovery deadline, serving and responding to requests, and agreeing to a Protective Order that was to keep confidential any documents exchanged between the parties), made attempts at mediation, and demanded that the court order Plaintiff to relinquish $500,000 in order to proceed with her claims. Many of these actions necessitated hearings before the court, as well as written decisions.
While taking these various actions over a nineteen-month period, Defendants not once indicated to the court or the Plaintiff that they intended to invoke their *690 right to arbitrate. The one-sentence reference to a contractual agreement to arbitrate in Defendants’ Answer was not sufficient to put Conway on notice that they would ultimately insist on arbitration where they otherwise proceeded as if they intended to bring the matter to trial. To the extent that they argued the merits of Plaintiffs case in their Motion to Dismiss, that motion was a form of “test[ing] the water before taking the swim” and inconsistent with Defendants’ right to arbitrate. See Home Gas 403 Mass. at 778. What’s more, Defendants’ delay in asserting their arbitration right, as well as the totality of their in-court conduct, contravenes the Commonwealth’s primary goal in upholding arbitration agreements: allowing the opportunity to resolve disputes expeditiously, as an efficient alternative to litigation.[6] See id. at 776-77.
Moreover, Plaintiff has expended time and expense to litigate Defendants’ Motion to Dismiss, as well as their motion to amend judgment. While the case is not on the eve of trial, Plaintiff has both served and received initial discovery requests, information, and documents. The parties drew up multiple joint motions for the court’s consideration. The court acknowledges that delay in filing a motion to compel arbitration, alone, is not sufficient to show prejudice. See Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 950 (1st Cir. 2014). However, Defendants did much more than merely delay litigation in favor of arbitration. Indeed, they engaged the mechanisms of the judicial system for over a year and a half, without indication of a preference for arbitration. In this context, the court agrees with Plaintiff that she therefore needlessly expended resources in continuously opposing Defendants’ demands or jointly resolving their concerns. See id. at 949 (“Some degree of prejudice ordinarily may be inferred from a protracted delay in the assertion of arbitral rights when that delay is accompanied by sufficient litigation activity”).
Without legitimate excuse, Defendants were content to allow Plaintiff to further her suit before this court for over eighteen months before finally, without any apparent change in circumstances, moving to compel arbitration. As the First Circuit Court has stated, “(K]nowing early on, or at least after suit is brought what procedures are to be followed — specifically, whether arbitration is sought as to arbitrable issues — is a condition of efficient planning by the court and of protecting the opponent against prejudice.” Rankin v. Allstate Ins. Co., 336 F.3d 8, 13 (1st Cir. 2003). Taken together, Defendants’ actions were inconsistent with their right to arbitrate and prejudicial to Conway. They were also wasteful of the court’s time and resources. Thus, Defendants’ Motion to Compel Arbitration and Stay the Proceedings will be denied.
III. Enforcement Arguments
Plaintiff argues, for various reasons, that the arbitration provisions in her three contracts with Planet Fitness are not enforceable. Yet, even assuming the arbitration provisions are applicable to Conway’s claims, the court has determined that Defendants waived any right to arbitration. Thus, the parties’ disputes regarding enforcement of those clauses are moot, and the court need not address them. See Norwood Hosp. v. Munoz, 409 Mass. 116, 121 (1991) (courts do not generally decide moot issues).
CONCLUSION
For the reasons set forth above, Defendants’ Motion to Compel Arbitration and Stay the Proceedings is DENIED.

 The court is familiar with the alleged facts concerning the merits of Plaintiffs claims. For this reason, this background sets forth only those facts relevant to Defendants’ Motion to Compel Arbitration and Stay the Proceedings. A more comprehensive account is provided in Conway v. Planet Fitness Holdings, LLC, ESCV2013-0756, Memorandum and Order on Defendants’ Motion to Dismiss the Complaint, slip op. at 1-8 (Mass.Super.Ct. June 16, 2014) (Kirpalani, J.).

 See Conway v. Planet Fitness Holdings, LLC, ESCV2013-0756, Memorandum and Order on Defendants’ Motion to Dismiss the Complaint, slip op. (Mass.Super.Ct. June 16, 2014).

 Conway also argues that Defendants explicitly waived their right to arbitrate by entering into various discovery agreements, including a protective order. The court is not persuaded by this argument. In the court’s review of the record, Defendants never expressly stated a waiver of arbitration in any of those agreements. Thus, while they may be relevant to whether or not Defendants impliedly waived their right to arbitrate by litigation conduct, those discovery agreements do not constitute explicit waivers of such right.

 Many appellate courts in other states have similarly determined that judges should continué to resolve claims of litigation-related waivers, despite the language in Howsam. See e.g, Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006); Hong v. CJ CVG Am. Holdings, Inc., 222 Cal.App.4th 240, 258 (2013); Radil v. National Union Fire Ins. Co., 233 P.3d 688, 695 (Colo. 2010); Cassedy v. Hofmann, 15 So.3d 938, 942 (Fla.App.Ct. 2014); Ford Motor Credit Co. v. Cornfield, 395 Ill.App.3d 896, 911 (2009); American Gen. Home Equity, Inc. v. Kestel, 253 S.W.3d 543, 552 (Ky. 2008); Good Samaritan Coffee Co. v. LaRue Distrib., 275 Neb. 674, 683 (2008); Perry Homes v. Cull 258 S.W.3d 580, 589 (Tex. 2008).

 The court notes that Defendants have failed to provide any persuasive explanation for their delay in moving to compel arbitration. When directly questioned during the hearing on the instant motion as to why they sought in the first instance to relocate the litigation to a New Hampshire Court rather than immediately seeking to invoke their arbitration rights, Defendants’ counsel merely stated that that was what Defendants wanted because of their connections to New Hampshire. For her part, Plaintiff attributes the delay to Defendants strategic choice to try first to secure a judicial order mandating her surrender of the $500,000 in compensation she had received before proceeding to arbitration. Plaintiff further posits that what finally prompted Defendants’ belated assertion of their arbitration rights was a recent decision by a Massachusetts federal district court judge following a bench trial in a case involving Planet Fitness, see *691 America’s Growth Capital, LLC v. PFIP, LLC, 2014 U.S. Dist. LEXIS 38405 (D.Mass 2014) t In which the judge made factual findings that, if given preclusive effect in the instant litigation, would be disadvantageous to them. The court declines the invitation to engage in such speculation as to Defendants’ strategy in the current matter, but it finds the infirmity of the proffered explanation for the delay to be relevant to its waiver analysis. See Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (2003) (indicating that a party’s “undue delay” in moving to compel arbitration is generally the primary factor in waiver analysis) (emphasis added). See also Cabinetree of Wisconsin v. Kraftmaid Cabinetry, 50 F.3d 388, 391 (7th Cir. 1995).